## EVITT v. EVITT:

1. It is not a good ground of exception to a part of a charge, correct in itself, that the court omitted therefrom some other principle of law or some other material fact for consideration by the jury. If it was requisite and essential that the court should have charged upon the omitted principle of law or material fact, that should be excepted to upon the ground that the court did not in the course of his instructions charge upon that subject.

2. The charge in this case that the marriage contract was something more than a civil contract, that it was a "social relation, ordered of God, sanctified by the covenant of Isaac and Rebecca, esteemed and revered by all upright men," even if it was unauthorized because it stated views of the marriage status not altogether in accordance with the laws upon this subject embodied in our Civil Code, it was not hurtful to the movant in the case; for it no more tended to stress or magnify the husband's duties under the marriage contract, or arising out of the marriage status, than it did the duties of the wife.

3. The charge of the court criticised in the fourth ground of the amendment to the motion for a new trial contains no complete proposition or principle of law given to the jury for their guidance; and it can not be held that the charge was an incorrect statement of the law, or that it excluded from the consideration of the jury other "causes than that which would relieve the husband from support and maintenance."

4. The charge excepted to in the fifth ground was a proper and pertinent charge upon the subject there dealt with.

32

5. The charge excepted to in the sixth ground was not error for any of the reasons assigned.

6. The following charge is excepted to: "If you do not decide to fix alimony—if you award her alimony, and do not decide to fix it by the month, but in one lump sum, then say, we, the jury, find in favor of the plaintiff so many dollars and cents alimony, as one lump sum." This was not error upon the ground that "it instructed the jury if they do not decide to fix alimony, then they should find so many dollars and cents alimony;" nor because it was "misleading and confusing;" nor because it was "impossible for the jury to tell whether the court meant from said charge for them to fix alimony in any event or not." It is apparent that up to and including the word *alimony* where first used, the court commenced a statement of a proposition or principle of law, and then it is equally clear that he abandoned or dismissed that subject or proposition entirely, and the rest of the sentence is disconnected entirely from the proposition which the court first intended to announce, and contains a separate, distinct, clearly stated and unexceptionable instruction.

7. Though the court refused to charge as duly requested in writing by movant's counsel, this refusal did not constitute error, as it appears that the court's charge as actually given sufficiently covered the subject treated in the request to charge.

8. In a suit for divorce, alleging as grounds therefor adultery and cruel treatment, either party may testify with respect to the alleged cruel treatment, but not with respect to adultery. The Civil Code, § 5861, makes parties wholly incompetent to testify only when adultery is the sole basis of a suit, action, or proceeding. The objection to the wife as incompetent to testify in the case was properly overruled. Moreover, a part of the evidence objected to as a whole was admissible, and the overruling of the objection going to the entire testimony was not error.

9. Evidence tending to show conduct upon the part of the husband towards the wife, which, while it did not amount to cruel treatment in the sense in which that term is used making cruel treatment a ground for divorce, tended to show that the wife had not without cause left the husband and determined to live separately from him, was not objectionable upon the ground that it was irrelevant and immaterial.

10. At common law a party to a cause was excluded from testifying. By the enabling act of 1866 this disability was, as a general rule, removed, but with certain exceptions. One of these exceptions is made in the statute declaring that nothing contained in the act referred to "shall apply to any action, suit, or proceeding in any court, instituted in consequence of adultery." And while, where the wife brings a suit for alimony based upon two grounds, that is, cruel treatment and adultery upon the part of her husband, she may testify to the acts of cruel treatment, she is not competent to testify to acts tending to establish the allegations in the petition relating to the adultery charged.

No. 4849. June 19, 1925.

Alimony. Before Judge Crum. Wilcox superior court. March 24, 1925.

*Wall & Grantham* and *A. J. & J. C. McDonald,* for plaintiff in error.

*N. M. Patten* and *Hal Lawson,* contra.

BECK, P. J. Mrs. Harriet Evitt brought her suit against A. L. Evitt for temporary and permanent alimony. The petitioner and defendant had been married since the year 1886, and lived together as husband and wife until recently. They had eight children; all had attained their majority except one. It is alleged in the petition that the husband and wife are now living in a bona fide state of separation. The petitioner left the defendant, and alleges as grounds for leaving him acts of cruel treatment upon his part and existing adulterous relations between him and another woman. In his answer the husband denied the alleged cruel treatment and the acts of adultery. Upon the trial of the case the jury returned a verdict in favor of the petitioner, allowing her $60 per month alimony. The defendant made a motion for a new trial, which was overruled, and he excepted.

1. Exception is taken to the following charge of the court: "The defendant comes into court and files his plea in the case, his answer, in which he denies substantially the allegations of the plaintiff. He denies that his association with the other woman referred to was of any incriminating character, or otherwise than merely friendly intercourse and association; he says that there was nothing improper whatever in their relations, and avers that he has at all times supported his wife to the best of his ability, and that her separation from him at this time is not through any fault whatsoever on his part. Wherefore he prays that no alimony whatever be granted to the plaintiff." It is not denied that this charge correctly states the contentions of the defendant as far as it goes; it is excepted to upon the ground that it "is erroneous because it left out the contention by the defendant that his property was encumbered for as much as it was worth, and that he was unable to pay alimony." This is not a meritorious criticism upon the portion of the charge excepted to. An exception to a charge which is correct and proper in itself, on the ground that it does not charge some other principle of law or some other pertinent matter to be considered, can not be regarded as showing ground for reversal of the judgment refusing a new trial. If the charge as given was a correct statement of the contentions of the

party referred to, the fact that the court did not in immediate connection therewith state some other contention affords no ground for the grant of a new trial. So far as this ground of the motion shows, the court might have stated elsewhere in the charge the contention of the defendant which it is alleged is here omitted, and that would have been sufficient.

2. This part of the court's charge is excepted to: "Now, we first consider the status of married parties. Marriage is an holy relation. It is not only a civil contract, but is a social relation, ordered of God, sanctified by the covenant of Isaac and Rebecca, esteemed and revered by all upright men." The grounds of exception are: "(a) because it stressed too much the relation; (b) because it dealt with the marriage as a contract, not only as a civil but as a divine contract; (c) because it instructed the jury that marriage was not only a civil contract but a holy contract; and (d) because said charge impressed upon the minds of the jury that the marriage contract was something more than a civil contract, to wit, a divine and religious contract, and impressed upon the jury that it was entered into by an order of God, and would tend to impress upon the jury that the contract entered into with so much solemnity could not be disregarded by the parties, since it was more than a civil contract." We will not enter here upon the discussion of the nature of the marriage contract or the marriage relation. The views of many eminent jurists and textwriters on the nature of the contract of marriage and various "definitions of marriage" are collected in the opinion of Judge Lumpkin, in the case of *Askew* v. *Dupree, 30 Ga.* 173. The definition of marriage found in Bishop on Marriage and Divorce is there quoted approvingly, and is in the following language: "The word marriage is used to signify either the act of entering into the marital condition, or the condition itself. In the latter and more frequent legal sense, it is a civil status, existing in one man and one woman, legally united for life for those civil and social purposes which are based in the distinction of sex. Its source is the law of nature, whence it has flowed into the municipal laws of every civilized country, and into the general law of nations. And since it can exist only in pairs, and since no persons are compelled, but all who are capable are permitted to assume it, marriage may be said to proceed from a civil contract between

one man and one woman of the needful physical and civil capacity. Though marriage in law writings is generally denominated a contract, yet it is said to be more than a contract, and to differ from all other contracts." And Judge Story's view of marriage, as it appears in his Conflict of Laws, is also there quoted, and seems to be quoted approvingly; and that is in the following language: "Marriage is not treated as a mere contract between the parties, subject, as to its continuance, dissolution, and effects, to their mere pleasure and intentions. But it is treated as a civil institution, the most interesting and important in its nature of any in society."

From the definitions and views collected in the opinion in the *Askew* case, supra, it would seem to be the consensus of opinion of the writers and jurists there referred to that while marriage may be denominated a contract, yet it is more than a contract; and even considered as a contract, we know that it differs from other contracts in many and material respects. It creates a status, it imposes duties upon both parties to the contract or both parties affected by the status; it imposes duties and rights having their origin in the laws of nature. And from that standpoint, since a Divine Being is the author and creator, not only of everything and every person in the universe, but of the law affecting and to some extent controlling everything and every person in the universe, marriage, which is founded in the law of nature and in obedience to its dictates, is of a divine origin. And this is emphasized by the teachings of Holy Writ. But we will be carried far afield if we attempt to point out how far our laws recognize those teachings or to what extent the marriage status is affected by them. But our legislators, we know, have not ignored those teachings in framing laws that relate to marriage and divorce and the status of the parties to the marriage contract. As an example, we have a statute expressly declaring that the husband is the head of the family and the wife is subject to him; that her legal civil existence is merged in the husband's, except so far as the law recognizes her separately. But in a proceeding like the present, to enforce the rights of a wife to alimony, the wife must come into a court of law upon a petition to that court, and the allegations of her petition must show a right to maintain the suit and to recover alimony under the statutes of the State of Georgia, under the Civil Code; otherwise her petition will be fruitless. In that view of the case, possibly

it was beside the mark for the judge in charging upon the marriage status to charge the jury that it was a holy relation, that it "is a social relation ordered of God, sanctified by the covenant of Isaac and Rebecca, esteemed and revered by all upright men." For while we agree with him in these sentiments, the enunciation of these principles was not necessary to the determination of the wife's right in a court of law, where she was basing her claim for a recovery upon her allegations that her separation from her husband was upon grounds which are recognized by our Civil Code, that is, cruel treatment and adultery on the part of the husband. But we do not think the defendant could have been injured by this charge, even if marriage, so far as relates to the question here involved, is based upon a purely civil contract. For what harm could come to the defendant from this charge, even if, as the movant contends, it impressed upon the minds of the jury that the marriage contract was something more than a civil contract, and that a contract entered into with so much solemnity as the marriage contract "could not be disregarded by the parties, since it was more than a civil contract." It did not tend to emphasize more the duties of the husband than it did the duties of the wife. The duties of the parties to a marriage contract or parties affected by the marriage status are largely reciprocal; and to tell the jury that the contract was of divine origin put no heavier burden upon the respondent in this case than it did upon the petitioner. And we do not think the charge as given affords ground for the grant of a new trial for any reason alleged. And what is said above is applicable to other portions of the charge excepted to upon grounds similar in substance to those which are assigned for the attack on the charge first set forth above.

3. In the fourth ground of the amendment to the motion for a new trial the following is set forth as a part of the court's charge to the jury: "The support and maintenance from the husband to the wife until the day when death separates them, or until the marriage contract has been dissolved by some decree of divorce issued out of a court of competent jurisdiction, and, on the other hand, the obligation on the part of the wife of service, and obedience and wifely association." Movant contends that this was erroneous, "because it is not a correct statement of the obligation of the husband; and because the court thereby instructed the jury

that the support and maintenance from the husband to the wife unto the day when death separates them, or until the marriage contract has been dissolved by some decree of divorce, excluded any other cause than that which would relieve the husband from support and maintenance." These exceptions are not well taken. In the first place, the extract quoted and criticised is not a complete statement of any proposition or principle of law. Apparently, though the extract has a period after it, it is not a complete sentence. It is attacked upon the ground that it is not a correct statement of the obligation of the husband. It is apparent that it is not a statement at all of the obligation of the husband nor of the wife; though there is reference made to the support and maintenance of the wife by the husband and the obligation on the part of the wife of service, obedience, etc., there is no statement as to the standard by which the jury shall decide as to whether or not there was proper support and maintenance for the wife, or determine the character of the support due from the husband to the wife, nor is there any statement of the extent, limitation, or obligation on the part of the wife of service, obedience, etc., to the husband.

4. The court further charged the jury as follows: "So that, where the wife sues the husband for alimony, the first consideration of the jury in approaching the case is to examine the evidence and ascertain therefrom if the separation exists as alleged by the wife, and that is, are the husband and the wife living in a bona fide state of separation? If so, then inquire secondly what was the cause of the separation; and if the jury find that the case as alleged in the plaintiff's petition is supported by the testimony, and that the separation was brought about, not by the fault of the wife, but by the fault of the husband, as may be alleged in the grounds filed by the plaintiff in her petition, then the jury would be authorized to find alimony in favor of the wife as against the husband." This charge substantially stated the law applicable to the issues involved here.

5. The court also, in the course of his instructions to the jury, charged the following: "Now, in fixing the amount of alimony to be awarded in the case, if any be awarded, the jury will take into consideration all the facts and surrounding circumstances of the case as shown by the evidence in the case. Among other things

that the jury may consider in the case, they may consider the age and health of the respective parties, as shown. The jury may consider the physical strength of the parties, the ability of each of the parties to work, and to earn money. The jury may take into consideration what amount of property is now owned by either of the parties, or both. The jury may take into consideration, if either owns property, how the same was acquired, how the same was obtained, from what source it was obtained; was it obtained by inheritance by either, or was it obtained by the labor of one, or the other, or both of the parties? How was the accumulation of property made, if any there be? Who assisted in it? How was it brought about? Take all the facts and surrounding circumstances of the case. Consider the present needs of the wife, if she be entitled to alimony, consider her present needs as disclosed by the testimony in the case. And, gentlemen, in that connection you would not be denied the right to use your own human experience, such experience as you may have, in judging of what may be the necessary amount for the support of one, the wife in this case, as the evidence discloses. You may take into consideration, I will say again, gentlemen of the jury, all of the facts, and all of the surrounding circumstances of the case as shown by the evidence, and then fix such an amount as is proper for the support of the wife, taking into consideration further the manner of life in the past, her needs for the future, her health, her environments, her ability to support herself, or her lack of ability, whether she has others that might contribute to her support, her necessities in the way of food and clothing, and likelihood of surgical or medical attendance, if any is likely to be, all of the facts and surrounding circumstances of the case in fixing the amount of alimony, if you decide she is entitled to alimony, such as will be a just and proper verdict under the facts and circumstances of the case." This charge is excepted to upon the ground that it failed to instruct the jury as to "what things the jury should consider in the case other than those enumerated." Such an exception is without merit, as it in no way indicates the "other things" or any of the "other things" that the court should have called the attention of the jury to, or that the failure to mention rendered the charge as given erroneous.

The charge is also excepted to upon the ground that it failed

to instruct the jury as to their duty to consider, in connection with the evidence as to the property owned by the defendant, any evidence tending to show the amount of the debts with which the defendant was burdened at that time and his financial circumstances. The failure to charge upon this subject did not render faulty the charge otherwise correct and pertinent. If it was essential for the court to call attention to the debts of the defendant without a written request to do so, and there was a failure upon the part of the court to mention this subject in his entire charge, it should have been excepted to upon the ground that the court did not anywhere in his instructions to the jury charge them as to this material question. This particular exception to the charge last quoted is without merit, under the rule stated in the first division of this opinion. The further exception to the charge that it was vague, uncertain and indefinite, is also without merit.

6. The ruling made in the 6th headnote requires no elaboration.

7. The court was duly requested in writing to give the following charge to the jury: "If the jury should find from the evidence that at the time the defendant moved from the State of South Carolina to Georgia the plaintiff in this case refused to move to Georgia and to reside in Georgia with the defendant, without cause or reason, then the plaintiff would not be entitled to alimony; and if you find that the plaintiff continued to reside apart from her husband since his removal from South Carolina, without cause or reason, then the plaintiff should not be entitled to recover." We do not think the refusal to give this in charge was error, although the proposition of law there stated is correct and is pertinent to the issues involved in the case; for the subject treated in the request was sufficiently covered in the charge as given by the following instructions to the jury: "I charge you, gentlemen of the jury, that under Georgia law the husband has the right to fix the abode and residence of himself and wife; and if the husband fixes an abode, and the wife voluntarily, without just cause, refuses to live with the husband at the abode fixed by him, then that would be separation in law on the part of the wife, and would be a bar to alimony, unless such separation was condoned on the part of the husband afterwards."

8. In the 9th ground of the motion for a new trial a long

extract from the testimony of Mrs. Evitt, the plaintiff in the case, is set forth, and error is assigned upon the judgment of the court overruling the objection made by defendant's counsel to this testimony and admitting it as evidence in the case; the objection made was that the plaintiff is "incompetent to testify in the case, the suit being based solely upon the ground of adultery of her husband." An examination of the petition in the case will show that the suit was based upon the ground of cruel treatment as well as upon the ground of adultery; and therefore the wife was not an incompetent witness in the case, though she was incompetent to testify to facts tending to establish the charge of adultery against her husband. The objection goes to the evidence in block; and part of it being admissible, the overruling of the objection to the testimony as a whole does not constitute ground for the grant of a new trial. Moreover, the wife was not, as stated in the objection, "incompetent to testify in the case," as she would have been if the case had rested solely upon the ground of adultery on the part of her husband. "In a suit for divorce, alleging as grounds therefor adultery and cruel treatment, either party may testify with respect to the alleged cruel treatment, but not with respect to adultery. The Civil Code, § 5861, makes parties wholly incompetent to testify only when adultery is the sole basis of a suit, action, or proceeding." *Arnold* v. *Arnold,* 141 *Ga.* 158 (80 S. E. 652).

9. The ruling made in the 9th headnote requires no elaboration.

10. The wife was permitted to testify as follows: "Some of the children said something about that woman, said if he didn't quit worrying me about that woman they were going over there and pour kerosene on her and set her afire, just to be talking, you know; and he told them if they went over there and bothered her he would put them back in South Carolina, d——n them, all of them, and he stamped his foot and raised a rucus around there with the whole business." She was permitted to testify also that "He didn't give me any money. I knew he wouldn't give me none, and I didn't think I could stay in the way he was doing. I just left him because I knowed I couldn't stay there in the way he was going on. I don't think I need to tell you how he was going on, don't have to speak everything out like that. I lived with him a

long time, and he never did do nothing for me like that, he never bought me a gown. I had three children, and he never bought me a gown in his life, and he never done anything to please me; he never done anything just to satisfy me in his life. I thought he would be better, like he told me, and when I got here he went on just the same." And again she was permitted to testify: "Some of the children told him if he didn't leave this woman alone and quit worrying me with her, they were going to go over there and pour kerosene on her and set her on fire, and he got mad and he said he would put us all back in South Carolina quicker than we got there, that they had no business there anyhow, he didn't want nary child he had there. I hadn't been accusing him of this Walker woman then. I never seen this Walker woman until to-day in my life; she is sitting over there, I understand; he made that remark just because he wanted to, is all that I know; but that is all right, I am satisfied for him to have his Walker woman; if he will just divide up what we have got and give me my part to live on, he can have his Walker woman, I am satisfied. I can live without him; and if I have got to work, I can certainly work. I have never seen him with the Walker woman. I was sick nearly the whole time I was there. I can't tell you how many times he ever mentioned the Walker woman; I don't know; every time I seen him that was all he talked about; he would bring her up himself, just go ahead and tell me about her himself. I never did ask him about her. I even tried to keep out of the way to keep him from talking about her. I have asked him about her. I asked him if he was going to remain on with this Walker woman, and he said, yes, he expected to remain on with her as long as she would let him; and I just turned off and left him, because I thought if he wanted her he was welcome to her, and I never said anything else to him about the Walker woman. That was not the only two things I quit my husband about."

All of this testimony was objected to upon the ground that the plaintiff was incompetent to testify to the facts recited by her, on the ground that it was evidence tending to establish the ground of adultery as alleged in the petition. The court overruled the objection. It seems to us that the exception to this ruling of the court is well taken. The wife was permitted not only to testify

to circumstances tending to show the illicit relations of her husband with another woman, but was permitted to testify directly to statements which she claimed he· had made to her; for she said in part, "I asked him if he was going to remain on with this Walker woman, and he said, yes, he expected to remain on with her as long as she would let him." In the case of *Bishop* v. *Bishop,* 124 *Ga.* 293 (52 S. E. 743), it was said: "At common law a party to a cause was excluded from testifying. By the enabling act of 1866 this disability was, as a general rule, removed, but with certain exceptions. One of these is stated in the Civil Code [1895], § 5272, where it is declared that nothing contained in the act referred to 'shall apply to any action, suit, or proceeding in any court, instituted in consequence of adultery.' This exception was based not merely on the rights of individual parties or made solely for their benefit, but rested on a sound public policy which prevented husband and wife from mutually destroying the character of each other because of quarrels or disagreements between themselves. . . The expression, 'any action, suit, or proceeding in any court, instituted in consequence of adultery,' used in the Civil Code [1895], § 5272, is not to be given a narrow or restricted meaning. In *Sloan* v. *Briant,* 56 *Ga.* 59, it is said: 'Whether it be the immediate or the remote cause is immaterial, if the suit be the consequence of adultery as the cause. The words, "in consequence," apply as well to the initiatory as to the proximate cause of this· suit.' In *Graves* v. *Harris,* 117 *Ga.* 817 [45 S. E. 239], it was held that 'the plaintiff in an action for alienating the affections of his wife and inducing her to commit adultery was incompetent at the trial to testify as a witness to any fact.' See also *Thomas* v. *State,* 115 *Ga.* 235 [41 S. E. 578]; *Cook* v. *Cook,* 46 *Ga.* 308."

Other exceptions to the rulings of the court not specially mentioned show no ground for the grant of a new trial.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*

Russell, C. J., concurring specially. I concur in the result and in what is said in the 10th headnote and the accompanying division. My views do not precisely coincide with what is said in some of the other divisions of the opinion.