SUMMEROUR *v.* FORTSON, Judge.

No. 8681. JUNE 17, 1932.

Original application for mandamus.

*Elijah A. Brown Jr., A. M. Kelly, E. W. Roberts,* and *W. F. Lewis,* for the applicant.

HINES, J. George Summerour was convicted and sentenced to death by electrocution, at the November term, 1930, of Walton superior court. His motion for a new trial was overruled by the trial judge; and that judgment was affirmed by this court. *Summerour* v. *State,* 172 *Ga.* 560 (158 S. E. 327). Thereafter at the August term, 1931, of the superior court, the defendant by his next friend filed his extraordinary motion for new trial upon the grounds

that (1) at the time of said trial he was a minor and not represented by a guardian ad litem or other guardian; (2) on account of his minority he was legally incapable of knowing that he was entitled to a guardian ad litem, and therefore was not bound to raise this point before, and was legally incompetent to know his rights in said matter; and (3) the judge of said court ordered a mental examination of the defendant, which had lately been completed in compliance with the judge's order, and this examination showed that he had the mentality of an immature child. On said motion the judge issued a rule nisi calling upon the State to show cause, on September 19, 1931, why a new trial should not be granted. The solicitor-general acknowledged service of the motion and rule nisi. On September 19, 1931, the State filed a traverse to said motion, in which it denied that the defendant was a minor only 18 years old at the time of his trial, but that on the contrary he was 21 years of age. It was admitted that the defendant was not represented by a guardian ad litem; and it was set up that under the laws of this State it was not necessary that a guardian be appointed to represent a minor defendant in a criminal case, that the defendant was ably represented by counsel appointed by the court, and that his rights in every way were protected. On the hearing of the extraordinary motion for new trial evidence was introduced tending to show that the defendant was 18 years of age at the time he was tried. There was other evidence tending to establish that he was over 21 years of age at the time of his trial. The defendant introduced in evidence the following report:

"Department of Psychology, University of Georgia, Athens, August 15, 1931.

"Judge Blanton Fortson, Superior Court Western Circuit, Athens, Ga.

"Dear Sir: In compliance with your order for the psychological examination of George Summerour of Walton Co., Ga., sentenced to be electrocuted for murder, and brought to my office by Mr. W. F. Lewis and officers of Walton County, I beg to submit the following report:

"Actual showing on the Stanford-Binet examination for the development of intelligence indicates a mental age of 6 years and 11 months. Actual showing on a series of performance tests from the Pintner-Paterson scale indicates a mental age between six and

seven. Vocabulary test indicated a development of a child slightly under eight; on the test of reading ability he failed a ten-year-old test. According to his own statement and that of Mr. Lewis, he got no further than the first grade in school, due either to lack of ability or lack of opportunity to go to school, or both. Examinations of sight, hearing, and reaction time all gave results slightly below normal. Malingering is suspected. If there were no malingering, the mental age is about 7. If there was malingering, I can only estimate his mental age as being probably between 9 and 10; probably not much more than 9 years. The examination of George Summerour was made in my laboratory, U. of Ga., August 14, 1931, and took about two and one half hours.

"Respectfully submitted. A. S. Edwards, Professor of Psychology, University of Georgia."

The judge found that the defendant was only 18 years old at the time of his trial, and overruled the extraordinary motion for a new trial, upon the ground that it was without merit. The defendant tendered to the judge a bill of exceptions in which he assigned error on the judgment overruling the extraordinary motion for new trial. The judge declined to certify the bill of exceptions. Thereupon the defendant by his next friend applied to this court for a mandamus to compel the judge to certify his bill of exceptions, to the end that the judgment overruling his extraordinary motion for new trial might be reviewed by this court and a new trial granted to him. The judge in his answer set up that he declined to certify the bill of exceptions because he was of the opinion that it was wholly without merit.

■ It is well settled that this court will not grant a mandamus to compel the trial judge in a criminal case to certify a bill of exceptions assigning error on the judgment overruling an extraordinary motion for new trial, when the grounds of such motion are without merit. *Malone* v. *Hopkins,* 49 *Ga.* 221; *Cox* v. *Hillyer,* 65 *Ga.* 57; *Hanye* v. *Candler,* 99 *Ga.* 214 (25 S. E. 606); *White* v. *Butt,* 102 *Ga.* 552 (27 S. E. 680); *Perry* v. *State,* 102 *Ga.* 365, 368 (30 S. E. 903); *Coggeshall* v. *Park,* 162 *Ga.* 78 (7 *d*) (132 S. E. 632).

■ This brings us to consider whether the extraordinary motion presents a meritorious case for the grant of a new trial. The main question involved in this case may be stated thus: When an in-

fant who is 18 years of age is tried for murder, being represented by attorneys appointed by the court to defend him, is convicted, and excepts to the judgment overruling his motion for new trial, and this court affirms his conviction, will an extraordinary motion for new trial, filed at a term after the expiration of the one at which he was convicted and after the affirmance of his conviction by this court, lie to set aside his conviction upon the ground that a guardian ad litem was not appointed to represent him in his trial? It is earnestly insisted by counsel for the applicant, in their brief which displays much research and learning, that the conviction of their client, under the facts stated in the question just propounded, should be set aside, because the trial judge did not appoint a guardian ad litem to represent him on his trial. This contention is based upon certain grounds which we will now consider.

In the first place it is urged that the power to appoint a guardian ad litem is one incident to all courts, and that generally an infant can not appear by attorney, but must appear by a guardian ad litem appointed for that purpose by the court. In support of this proposition counsel for the applicant cite *Nicholson* v. *Wilborn,* 13 *Ga.* 467, and other cases of like import in other jurisdictions. It is earnestly insisted that this power is applicable in criminal cases, and should be exercised where the defendant is an infant, although he has reached the age of criminal responsibility. We shall undertake to show that this is the rule applicable to civil cases; and that it does not apply in criminal cases where minors have reached the age of criminal responsibility.

In the second place it is urged that this question has been decided favorably to petitioner in the case of Fahay *v.* State, 25 Conn. 205. It is true that in that decision it was stated: "A minor, as well as an adult, may be prosecuted for a criminal offense; but as the law considers the former incompetent to assert his rights, it makes it the duty of the court, before the prosecution is carried on, to see that guardian is appointed to assist the minor in his defense." If this point was properly raised in that case, we shall undertake to show that such ruling is contrary to the great weight of authority. Besides, the same court in James *v.* State, 37 Conn. 355, held that where a minor was tried, convicted, and sentenced upon a criminal complaint, without the appointment of a guardian ad litem, the proceedings were not void, but only erroneous.

In the third place it is insisted that the necessity for an infant who is charged with crime to defend by a guardian ad litem is laid down in Ruling Case Law, which declares that "In every criminal prosecution, action at law or in equity, or special proceeding, in which an infant is defendant, it is the duty of the court to appoint for him a guardian ad litem, at least in the absence of a general guardian; and until this is done he can not make a legal defense, nor can any step in the action be taken against him." 14 R. C. L. 282, § 52, note 12. In none of the cases cited to support this principle were the infants tried for crimes committed by them. None were criminal prosecutions. Therefore the decisions in those cases are not authority for the proposition that in every criminal prosecution it is the duty of the court to appoint a guardian ad litem for an infant defendant.

In the fourth place counsel for petitioner contend that under the Civil Code of 1910, § 3057, a guardian ad litem should be appointed for any minor who is prosecuted for the commission of any crime. That section is as follows: "Whenever a minor is interested in any litigation pending in any court in this State, and has no guardian, or his interest is adverse to that of his guardian, such court shall have power to appoint a guardian ad litem for such minor, which guardian shall be responsible to such minor for his conduct in connection with such litigation, in the same manner as if he were a regularly appointed guardian." It is insisted that the language, "in any litigation pending in any court in this State," is broad enough to cover a prosecution against a minor for the commission of crime. We do not think that this position is well taken. Litigation is "A contest, authorized by law, in a court of justice, for the purpose of enforcing a right." Bouvier's Law Dictionary (Students' ed. 1928), passim. A prosecution, on the other hand, is "The means adopted to bring a supposed offender to justice and punishment by due course of law." It is carried on in the name of the government, and has for its principal object the security and happiness of the people in general. The methods employed are by indictment, by presentment, by information, and by accusation. Bouvier's L. D. Litigation is a contest in the courts, authorized by law, for the purpose of settling a right between individual contestants. Prosecution is the means adopted to bring a supposed offender to punishment for crime committed. So it can not

be said that the section of the Code with which we are dealing refers to prosecutions as well as to litigation between individuals.

There are many provisions in the Civil Code of 1910 which refer to suits instituted or defended by infants by guardians ad litem. See §§ 3057, 3065, 3214, 3760, 3860, 5416, 5428, 5439, 5524, 5565, 6307, 6323. This enumeration is not intended to be exhaustive of all provisions of the Code for the appointment of guardians ad litem in civil proceedings to which minors are parties. We have had in this State a number of Penal Codes which were in force long before the adoption of our first Civil Code. We had one as far back as 1811. We had the Penal Code of 1833, which went into effect on June 1, 1834. The legislature has adopted a Penal Code whenever it has adopted a Civil Code. In each Civil Code there were embraced provisions for the appointment of guardians ad litem to represent minors in civil proceedings in which they were interested. In none of the Penal Codes adopted by the legislature of this State, which define crimes and prescribe procedure for the trial of those who are charged with committing them, are to be found any provisions for the appointment of guardians ad litem to represent minors who are prosecuted for infractions of the criminal laws of this State. But it may be said that the power to appoint such guardians is incident to the powers vested in the courts. This we concede. A trial judge possesses and can exercise this power in any case where an infant under the age of 14 years is prosecuted for crime, and is not represented by a natural or appointed guardian, or by an attorney appointed by the court to represent him. Circumstances may exist which would require the judge to appoint a guardian ad litem for a minor of the age of 14 years or more.

This brings us to consider and decide whether, in the absence of special circumstances, a minor, who is 14 years of age or over must be represented by a guardian ad litem when prosecuted for an infraction of the criminal law of this State. There is no statute in this State which provides for the appointment of such guardians. The fact that there are various provisions of the Civil Code which provide for the appointment of such guardians in civil proceedings to which minors are parties, and that there have been no provisions in the various Penal Codes of this State requiring the appointment of such guardians when minors are prosecuted for the commission of crimes, is significant; and shows that the legislature never in-

tended to provide for the appointment of guardians ad litem for minors charged with criminal offenses, in all cases, when they had reached the age of responsibility.

How does this matter stand under the common law? In Reg. v. Tanner, 2 Lord Raymond, 1284, the defendant was convicted on an information for riot. He moved for a new trial upon the ground that he was an infant under 18 years of age and ought to have appeared by guardian. It was held that "the course of the crown office is for infants in riots &c. to appear by attorney." The court refused to set aside the verdict. This decision was rendered during the reign of Queen Anne. A person is considered of sound mind who has arrived at the age of 14 years. Penal Code, § 33. An infant of that age is responsible and punishable when he commits crime. He is tried for the commission in the same manner as an adult is tried. In Word v. Commonwealth, 3 Leigh (30 Va.), 743, 745, the General Court of Virginia said: "The next error alleged is, that, the defendant being an infant, the court, on the motion of the attorney for the commonwealth, assigned him a guardian to defend him, and that guardian pleaded for him. This objection the court thinks fatal. Criminal proceedings against infants ought, in all cases, to be conducted in the same manner as against persons of full age. The defendant in this case had a right to appear in person, or by attorney of his own selection; and the circuit court erred in assigning him a guardian, and trying his case on a plea put in by the guardian." After the court first delivered its opinion in the case cited, it was suggested by the bar that the case presented very interesting and important questions, and that it would be well for the court to suspend its judgment and take full time to advise upon the subject. This the court decided to do, and requested the members of the bar, as amici curiæ, to assist the court with their views. In consequence of this request, Benjamin Watkins Leigh, as amicus curiæ, furnished the court with a written argument in the case which seems to have been adopted by the court. In this argument he said: "I apprehend, there is no difference in the method of proceeding, in any criminal prosecution whatsoever, against infants and against adults. In cases of felony, the infant as well as the adult, we all know, must appear and plead in person. In cases of misdemeanour, the infant, as well as the adult, has a right to appear and defend by attorney. 1 Chitt.

Crim. Law, 411. And an infant, in a criminal prosecution of any kind, may be outlawed for non-appearance (Id. 348), which could not be if the court might appoint him a guardian ad litem. The language in 1 Chitt. Crim. Law, 411, is, 'Where infants are prosecuted for misdemeanours, it is the constant practice for them *to appear by attorney* in the crown office, though in civil cases they must defend by guardian.' The author cites Tidd, 92, and 2 Ld. Raym. 1284. Regina *v.* Tanner and others. In that case (a prosecution for riot) the objection was, that the infant appeared by *attorney,* whereas it was insisted that he ought.to have appeared by *guardian;* and the court overruled the objection, because the practice and course was for infants, in such cases, to appear by *attorney.* The infant has a right to direct his own defense; he is not bound to entrust it to a *guardian* who is above his control, instead of an *attorney* who is subject to his control; he is personally liable to the amercement or other punishment, and is therefore entitled to defend himself in his proper person, or by attorney, selected by his own choice."

In Bartley *v.* People, 156 Ill. 234 (40 N. E. 831), the Supreme Court of Illinois said: "There is nothing in the statute or common law, in conformity with which criminal trials are had in this State, requiring a different procedure where the defendant is a minor from that in other cases." In that case it was "held that a minor defendant in a criminal case might waive the requirement that he be furnished with a copy of the indictment and a list of the jurors and witnesses." In Cutter *v.* People, 184 Ill. 395 (56 N. E. 412), the Supreme Court of Illinois declared that "The procedure in criminal cases is the same whether the accused is an adult or a minor; and hence it is competent for a minor defendant to waive the requirement of section 52 of the practice act that instructions be given in writing." In People *v.* Fisher, 303 Ill. 430 (135 N. E. 751), the Supreme Court of Illinois said: "The criminal code fixes the age below which there is a want of criminal capacity at 10 years, and when an infant above this age stands charged with a crime, he appears and defends in person or by attorney, the same as an adult. Bartlett *v.* People, 156 Ill. 254, 40 N. E. 831; Cutter *v.* People, 184 Ill. 395, 56 N. E. 112; 1 Wharton on Crim. Law (11th ed.), 123; 2 Bishop's New Crim. Proc. (2d ed.) 772; 22 Cyc. 626." In People *v.* Crooks, 326 Ill. 266 (157 N. E. 248),

the Supreme Court of Illinois made these rulings: "Courts are not required to appoint guardian ad litem for infant defendant charged with crime." "That defendant, pleading guilty to charge of murder, was minor, did not preclude him from waiving privilege under Cr. Code, div. 13, § 4 (Smith-Hurd Rev. St. 1925, c. 38, § 732), of having witnesses examined as to aggravation and mitigation of offense." In People v. Wunsch, 198 Ill. App. 439, it was held that "A guardian ad litem should not be appointed for a minor defendant in a bastardy proceeding, as such proceeding is criminal in form." In criminal proceedings an infant may appear and answer in person. Winslow v. Anderson, 4 Mass. 376; Robinson v. Com., 242 Mass. 401 (136 N. E. 241). The failure of the court to appoint a guardian ad litem for a minor defendant who is being prosecuted for bastardy is not cause for new trial. Evans v. State, 58 Ind. 587. An infant is amenable for crime, and he must plead without intervention of a guardian, and must suffer the penalty when found guilty. In re Rousos, 119 N. Y. S. 34. Upon a presentment against a minor for a misdemeanor, he has the right to appear and defend himself in person or by attorney, and it is error to assign him a guardian, and to try the case on a plea offered for him by the guardian. 1 Wharton's Crim. Law (11th ed.), 123, § 90. If an infant is above the age when criminal responsibility attaches, he may appear and defend in person or by attorney. Ledrick v. U. S., 42 App. (D. C.) 384; People v. Deliz, 22 Porto Rico, 312; 31 C. J. 1096 (§ 215) b. In People v. Wandell, 21 Hun, 515, the Supreme Court of New York said "But we have no doubt that the rule governing the infant's civil relations has no bearing. If above the age when criminal responsibility attaches, the infant appears and defends in person or by attorney. It has even been held to be error to assign him a guardian, and to try the case upon the plea pleaded for him by the guardian. Word v. Commonwealth, 3 Leigh, 743. His right to elect a mode of trial is an incident to the right to defend in person. As a further incident the infant must plead, and consequently he may plead guilty. Indeed, such pleas are frequently accepted, and that without question." So in Ex Parte White, 50 Tex. Cr. 473 (98 S. W. 850), the Criminal Court of Appeals of Texas held that "A minor may plead guilty to a crime," and said that "The mere fact that if appellant had sued and been sued in court on a civil action, he would necessarily have been

872

represented by a guardian ad litem, has no bearing in a criminal prosecution." So we reach the conclusion that the trial judge under the facts of this case was not required to appoint a guardian ad litem for this defendant, who at the time of his trial was 18 years of age.

■ But if we are in error as to the principle announced in the preceding division of this opinion, and if under the common law and the law of this State as the former existed, guardians ad litem should be appointed to represent infants in all cases when they are tried for the commission of crimes, this rule has been superseded by a provision of the constitution of this State to which we shall now call attention. By par. 5 of sec. 1 of art. 1 of the constitution of this State it is provided that "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel." Civil Code (1910), § 6361. "This is a privilege which belongs to every citizen of this State, without the slightest reference to his condition in life, and can not be legally denied him by the courts. The law in its humanity recognizes this right and privilege, and the legal profession, be it said to its credit, has never, so far as we are informed, in any case, in any court in this State, permitted any man, however humble and helpless he may have been, to be put upon trial for the commission of any offense without providing for him the means of enjoying this privilege. . . Our courts have uniformly adopted the practice of assigning counsel to represent indigent criminals in all cases when they were unable to employ counsel to represent them." *Delk v. State*, 99 *Ga.* 667 (26 S. E. 752). This practice was followed in this case. The record discloses that this minor was represented by able and experienced counsel, who were appointed by the court to defend him, and who did defend him with skill and ability. When this practice is followed, and a minor defendant is represented by able and skillful counsel, the necessity for the appointment of a guardian ad litem, if such appointment was ever required under the laws of this State, has been superseded. Such representation is much more efficient and valuable than that by an unprofessional guardian ad litem, which is often perfunctory. Whenever attorneys at law are appointed by the court to represent minor defendants who are charged with crime, and such minors are so represented, such appointments are in effect and to all intents and purposes ap-

pointments of guardians ad litem. For this reason, the conviction of the defendant in this case was not void because no guardian ad litem had been appointed to represent him.

■ Another ground of the extraordinary motion for new trial is that the trial judge appointed Professor Edwards, professor of psychology at the University of Georgia, to examine the mental condition of the defendant, and that the professor made a report in which he stated that, according to certain tests applied by him, the defendant possessed only a degree of intelligence equal to that of a child between 9 and 10 years of age. In his report Professor Edwards stated that he suspected malingering, in consequence of which he could only estimate that the mental capacity of the defendant was that of one between the ages of 9 and 10 years, probably not much more than 9 years of age. Professor Edwards was not sworn and examined touching the facts embraced in this report. In these circumstances can this report be received as evidence tending to establish the facts therein stated? Although any statement made by him ex cathedra is entitled to the highest credit, it does not, in the eyes of the law, amount to anything more than hearsay evidence; and as such is without probative value, although admitted in evidence without objection. *Claflin* v. *Ballance,* 91 *Ga.* 411 (18 S. E. 309) ; *Eastlick* v. *So. Ry. Co.,* 116 *Ga.* 48 (42 S. E. 499) ; *Suttles* v. *Sewell,* 117 *Ga.* 214 (43 S. E. 486) ; *Equitable Mortgage Co.* v. *Watson,* 119 *Ga.* 280, 283 (46 S. E. 440). It can not be admitted as an admission of the facts therein stated on the part of the State. *Bridges* v. *State,* 110 *Ga.* 246 (2) (34 S. E. 1037).

But if the facts embraced in this report had been properly proved, would they authorize the grant of a new trial? Would proof that a minor 18 years of age was of subnormal intelligence, and did not possess intelligence greater than that of a child between 9 and 10 years of age, authorize his acquittal of the crime of murder committed when he was of the above age? In this State "An infant under the age of ten years, whose tender age renders it improbable that he should be impressed with a proper sense of moral obligation, or be possessed of sufficient capacity deliberately to have committed the offense, shall not be considered or found guilty of any crime or misdemeanor." Penal Code, § 34. Clearly an infant of 18 years does not come within the exemption prescribed in this section. "A person shall be considered of sound mind who is neither

an idiot, a lunatic, nor afflicted by insanity, or who has arrived at the age of fourteen years, or before that age if such person know the distinction between good and evil." § 33. The defendant in this case does not fall within the provisions of this section. It was not shown that he was an idiot or lunatic, or afflicted by insanity. He had arrived at the age of 14 years. There was no proof that he could not distinguish between good and evil. There was no proof of special dementia or delusion. Evidence to show weakness of mind is not admissible where no facts are proved tending to show that the accused was an idiot or lunatic, or insane. *Studstill* v. *State,* 7 *Ga.* 2 (6) ; *Rogers* v. *State,* 128 *Ga.* 67 (57 S. E. 227, 10 L. R. A. (N. S.) 999, 119 Am. St. R. 364). If the accused could distinguish between right and wrong, he was responsible; otherwise not. The ability to distinguish between right and wrong is generally the test of criminal responsibility. There is an exception to this general rule when the homicide is committed in consequence of some delusion by which the will is overmastered, and there is no criminal intent. *Roberts* v. *State,* 3 *Ga.* 310; *Clark* v. *State,* 167 *Ga.* 341, 346 (145 S. E. 647). Proof showing that a minor, who commits a crime at the age of 18 years, did not then possess a degree of mentality greater than that of a child between the ages of 9 and 10 years, will not relieve him from responsibility for the crime, under section 34 of the Penal Code. He should go further and show that he did not possess sufficient intelligence to distinguish between good and evil. It follows that the trial judge did not err in refusing to grant the defendant a new trial upon this ground of his extraordinary motion for new trial.

In their brief counsel for the defendant state that the only question for decision by this court is that dealt with in the second division of this opinion ; and that the application for mandamus should be refused if we did not agree with them upon their contention upon the subject dealt with in that division of the opinion. However, as the defendant was convicted of murder without a recommendation, and has been sentenced to be punished with the extreme penalty of the law, we felt constrained to deal with this ground of his extraordinary motion for new trial. Whether the sentence, inflicting upon the defendant the extreme penalty of the law, should be commuted; in view of his subnormal mental capacity, is for determination by the Governor in the exercise of his pardoning power.

■ In view of the foregoing rulings, we refuse to grant a mandamus absolute requiring the trial judge to certify the bill of exceptions presented to him by the defendant.

*Mandamus absolute refused. All the Justices concur. Russell, C. J., concurs specially.*