PEACON *v.* PEACON.

No. 14851.  June 8, 1944.

750

*Isaác S. Peebles Jr.,* for plaintiff in error.

*B. B. McCowen,* contra.

DUCKWORTH, Justice. ■ Under the allegations of the petition as to fraud practiced upon the petitioner by reason of pregnancy

at the time of marriage, no verdict on that ground could legally have been returned in favor of the petitioner, and the court so informed the jury. As ruled in *Owens* v. *Owens,* 157 *Ga.* 397 (2) (121 S. E. 337), "Where a woman prior to her marriage falsely and fraudulently represented to her prospective husband that he was the father of a child with which she was then pregnant, such representation would not be ground for the grant of a divorce based upon fraud as defined in the Civil Code, § 2945, par. 5 [Code of 1933, § 30-102 (5)], where the petition for divorce alleges that he married her to avoid a prosecution for seduction." See also *Cox* v. *Cox,* 159 *Ga.* 862 (2) (127 S. E. 132). The pregnancy which under the above Code section constitutes a ground for divorce is "pregnancy of the wife, at the time of the marriage, unknown to the husband." The petition and testimony of the petitioner show that he was proceeded against and placed in jail under a seduction charge, necessarily involving pregnancy, and he can not be said to have been in duress or that the marriage was induced by fraud when, while being put on notice of her pregnancy, he married the defendant for no other reason than to prevent a prosecution for the offense of seduction. It follows that if a verdict was authorized for the petitioner, it would of necessity have to be based upon the other alleged ground of adultery of the wife.

■ It is contended by the plaintiff in error that the action was based on the alleged adultery; that the petitioner, the husband, was incompetent to testify; and that, disregarding his testimony, the evidence did not authorize the verdict. The second special ground of the motion for new trial is a mere elaboration of the general grounds. The third special ground complains that the court erred in submitting to the jury the question whether or not the petitioner had established to the satisfaction of the jury by a preponderance of the evidence that the defendant was guilty of adultery, whereas the court should have charged that the issue should be proved by a preponderance of competent evidence. The fourth special ground assigns error on the failure of the court to charge, without a request, that the jury should disregard any testimony of the petitioner having a tendency to establish adultery on the part of the defendant. All of these grounds are controlled by the same principle of law and will be considered together.

The incompetency of the husband to testify against his wife existed before the evidence act of 1866 (Ga. L. 1866, p. 138), which removed the incompetency of parties to appear as witnesses in suits brought by themselves except in certain specified instances. These provisions of the act appear in sections 1, 2, and 4 thereof, and, as amended by subsequent acts, are codified in the present Code as §§ 38-1603, 38-1604, 38-1605, and 38-1607. Section 3 of the act provides that, "Nothing herein contained shall apply to any action, suit, or proceeding, or bill, in any court of law or equity instituted in consequence of adultery, or to any action for breach of promise of marriage." By the act of 1935 (Ga. L. 1935, p. 120), the words "or to any action for breach of promise of marriage" were stricken from the Code of 1910, § 5561, as the third provision of the act was then codified, and the remaining portion is now codified in the present Code as § 38-1606. This provision as to incompetency has been reaffirmed in many decisions of this court, among which are: *Cook* v. *Cook*, 46 *Ga.* 308; *Woolfolk* v. *Woolfolk*, 53 *Ga.* 661; *Howard* v. *State*, 94 *Ga.* 587 (20 S. E. 426); *Graves* v. *Harris*, 117 *Ga.* 817 (45 S. E. 239); *Bishop* v. *Bishop*, 124 *Ga.* 293 (52 S. E. 743); *Anderson* v. *Anderson*, 140 *Ga.* 802 (79 S. E. 1124); *Arnold* v. *Arnold*, 141 *Ga.* 158 (80 S. E. 652); *Stodghill* v. *Stodghill*, 145 *Ga.* 101 (88 S. E. 676); *Evitt* v. *Evitt*, 160 *Ga.* 497 (128 S. E. 661); *Lowry* v. *Lowry*, 170 *Ga.* 349, 357 (153 S. E. 11).

The incompetent testimony, which was not here objected to, can not be disregarded merely by analogy to the rule as to hearsay testimony which, having no probative value, is not entitled to consideration. See, as to hearsay evidence, *Suttles* v. *Sewell*, 117 *Ga.* 214, 216 (43 S. E. 486); *Estill* v. *Citizens & Southern Bank*, 153 *Ga.* 618, 625 (113 S. E. 552); *Summerour* v. *Fortson*, 174 *Ga.* 862, 873 (164 S. E. 809). As pointed out in *Berry* v. *Brunson*, 166 *Ga.* 523, 532 (143 S. E. 761), the basis for the rule is that hearsay evidence is without the sanction of an oath, and the party against whom it is offered can not cross-examine the one who made the statement, and for these and other reasons it is without probative value. In that case the defendant was allowed to testify without objection as to transactions and communications with the intestate of the opposite party. Such testimony was, of course, incompetent, but it was nevertheless of probative value, for

which reason this court held that, if the opposite party desired to take advantage of the incompetency, a timely objection should have been interposed. The headnote in that case is as follows: "The testimony of an incompetent witness, if it is material, when received without objection, is of probative value, and will be considered and given such weight as the jury deems it entitled to, in view of his interest and other circumstances." To the same effect, see *Brittain Brothers Co.* v. *Davis*, 174 *Ga.* 1 (5) (161 S. E. 841); *Lefkoff* v. *Sicro*, 189 *Ga.* 554, 572 (6 S. E. 2d, 687).

But the question here presented is not one relating to mere privilege, but involves an absolute disqualification. The act of 1866, supra (Code, § 38-1606), plainly provides that nothing contained therein shall apply "to any action, suit, or proceeding in any court, instituted in consequence of adultery." The legislature enacted that, in changing the rule at common law so to permit a party to testify in a suit brought by himself, the common-law bar to his being a witness in "any action, suit, or proceeding in any court, instituted in consequence of adultery" is expressly retained. To permit such incompetency to be waived by the opposite party would not merely affect his rights but would defeat the clear intent of the legislature. This can not be done. In *Bishop* v. *Bishop*, supra, where a husband brought suit for divorce based on the alleged adultery of his wife, the husband, in answer to a question from her counsel as to why he left her, answered, "Because I caught her in bed with another man." On the question of the admissibility of this testimony under the circumstances, this court said: "Public policy forbids that a husband should be permitted to thus testify, although there may be no objection, or even if there should be an agreement for him to do so. If adultery was not involved in this issue, the evidence would have been wholly immaterial. But it is evident that it was directly relied on to prevent a judgment for alimony in favor of the wife." This court there treated the incompetency of the husband as an absolute disqualification or bar to his testifying to the adultery of the wife, and the husband's answer was held inadmissible, not merely because counsel for the wife, after asking a question which elicited the unfavorable answer, sought to have it eliminated, but because the husband was, without reference to such effort of counsel, barred from testifying in any manner to the adultery of the wife. The pronouncement of this court in that

case correctly reflects, we think, the legislative intent, and will be applied to the facts of the present case. Accordingly, we hold that the husband's testimony here, which tended to show adultery of the wife, was wholly inadmissible, even though no objection was interposed.

The testimony of the mother of the petitioner that he was not in Augusta in May, 1942, because he did not come to see her, is a mere conclusion based on a fact which did not warrant it. While it might be a very unfilial act, it was entirely possible for the son to have visited Augusta at that time, as testified by the defendant's brother, and yet for reasons satisfactory to himself to have failed to call upon his mother. Cold logic and reason, detached from sentiment, require us to hold that the testimony of the mother was without probative value. No evidence showed adultery, and the verdict for the petitioner was unauthorized.

The second and third special grounds of the motion for new trial are controlled by what is said above; and inasmuch as the case is being reversed, no ruling is deemed necessary on the question whether or not a continuance should have been granted to the defendant. *Judgment reversed. All the Justices concur.*