68555. CUZZORT v. THE STATE.
(325 SE2d 826)

BEASLEY, Judge.

Appellant was tried before a jury on two counts of aggravated sodomy of his young daughter. The jury returned a verdict finding appellant guilty of both counts. Appellant's motion for new trial was denied and he appeals from the judgments of conviction and sentences entered on the jury's verdicts.

---

[3] Even though the violation of the statute was capable of causing the injury.

1. Appellant enumerates the general grounds. The testimony of the victim, standing alone, authorized the finding that appellant had committed the crimes with which he was charged. There is no longer any requirement that the victim's testimony be corroborated. See *Motes v. State*, 161 Ga. App. 173 (3) (288 SE2d 256) (1982). Appellant's contention that the expert medical evidence contradicted the victim's testimony is refuted by the transcript. To the contrary, the medical testimony established that the victim's physical condition was not necessarily inconsistent with the commission of the acts that the victim had attributed to appellant.

" 'It is the function of the jury, not the appellate court, to determine the credibility of witnesses and weigh any conflict in the evidence. The appellate court views the evidence in the light most favorable to the jury's verdict after it has been rendered. [Cit.]' " *Bowers v. State*, 164 Ga. App. 462 (1) (297 SE2d 359) (1982). After a review of the entire record, we find that a rational trier of fact could reasonably have found from the evidence adduced at trial proof of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant complains that the court erroneously overruled an objection to hearsay testimony when the victim's mother was asked about her conversation with the victim. He asserts also that the error was reversible.

The trial scenario is as follows.

The victim testified on direct examination that she told her mother about the sexual relations with her father, after they moved out of the family home, on her grandmother's porch, and that the next day they went to the sheriff's office and then the hospital.

Defendant's attorney then cross-examined the victim and asked several questions about whether other girls told her about anything that happened to them "before you told your mama." He also cross-examined the victim about the conversation with her mother at great length:

"Q. Then, you say that you told your mother about it at your grandmother's?

A. Yeah.

Q. Why did you tell her about it, [name]?

A. I was scared.

Q. Okay. Now who all was there on that front porch at your mamaw's when you told this to your mother?

A. Me and mama.

Q. Anybody else?

A. Huh-uh. . . .

Q. Well, you've talked about it with your grandmother, haven't you?

A. I guess I did. I don't know.

Q. Okay. Isn't it true, [name], that your grandmother started asking you about this before you told your mother?

A. (Witness shakes head from side to side.)

Q. You're certain of that?

A. Yeah."

He kept cross-examining her about it.

On redirect examination, the victim acknowledged that she talked to her mother about what had happened to her, and that her mother did not make the story up for her and that her friend Vickie helped the victim decide to tell her mother.

The examining doctor testified that the victim was brought in to Tri-County Hospital by her mother and an officer from the Dade County Sheriff's Department and that he gave a general physical examination. He further testified that the vagina was unusually enlarged, indicating that something had been put into it over repeated times, and that although the anus appeared normal, that would not necessarily mean there had not been a violation of it by an adult male sex organ.

The mother testified that she took the victim to the sheriff's office because of a conversation she had had with the victim the day before. Defendant objected on grounds of hearsay when the mother was asked the question: "I don't want you to go into any detail, but what basically was the — ." The court allowed the mother to testify what the victim told her, which is what prompted the mother to take the victim to the sheriff's office, after the court instructed the jury that it was for the limited purpose of explaining the mother's conduct in taking the victim there. The court further explained that it was not to be considered for the truthfulness of the information, that is whether the content of what the victim said to the mother was true or not.

"Q. Could you tell us, then, what was it that you were told that led you to take [victim] to the Sheriff's Office?

A. She told me that Clines was taking her to the bedroom of a night when I was at work."

It is that answer that the appellant contends was reversible error to admit, i.e., inadmissible hearsay which was unlawfully prejudicial to defendant.

However, even if the objection should have been sustained, admission of the mother's answer, considering its content and its place in the context of all the other evidence, including evidence elicited by defendant, was not reversible error. Since it is a non-constitutional error, the test that applies is whether it is highly probable that the error did contribute to the judgment. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Teague v. State*, 252 Ga. 534, 537 (314 SE2d

910) (1984). It did not.

Even if the error were constitutional, it would not require reversal. In such cases the standard is harmlessness beyond a reasonable doubt. *Harrington v. California*, 395 U. S. 250 (89 SC 1726, 23 LE2d 284) (1969); *Schneble v. Florida*, 405 U. S. 427 (92 SC 1056, 31 LE2d 340) (1972). Considering everything, the jury's hearing the mother's statement was harmless beyond a reasonable doubt.

a. The defendant made an issue of whether or not the victim told her mother, by cross-examining her all about the communication, prior to her mother's testimony. He opened the door to the later question to the mother as to whether the victim did tell her about it.

b. A primary reason for the exclusion of hearsay testimony is that its truthfulness cannot be tested under oath before the trier of fact through the examination of the sayer. Its credibility is thus not able to be established to the degree necessary to render it worthy of consideration in the investigation for the truth. *Glisson v. State*, 57 Ga. App. 169, 170 (194 SE 877) (1938); *Peacon v. Peacon*, 197 Ga. 748 (30 SE2d 640) (1944). Here, although made out of court, the speaker as well as the hearer were both subject to thorough and sifting cross-examination under oath, before the jury, about what the speaker said.

c. The object of all legal investigation is the discovery of the truth. If the credibility of a witness is at issue, as here the victim's was, whether she told her mother of the incident, as she testified she did, was an issue of fact. It would have weakened her credibility if the mother testified that the victim told her something different than what the victim testified she told her mother, or different than what the victim testified had actually occurred.

d. While it may be true that the mother's conduct was not in issue, the victim's conduct and truthfulness certainly were. Had the 12-year-old fifth grader not told her mother, that fact would have been relevant to her veracity. The fact that she did tell her mother lends credibility.

e. The victim's testimony was corroborated to a degree by the physician's examination.

f. It is obvious from the evidence, absent the simple objected-to, rather inconclusive single-sentence answer of the mother, that the victim told her about some sexual conduct with defendant. The mother did not describe the conversation in great detail and was not even explicit as to any sexual activity. As a matter of fact, she only testified that the victim told her that the defendant was taking her to the bedroom while the mother was at work. Her answer was less damaging to defendant than would have been the reasonable inferences that could have been drawn from the circumstances. But there was no objection to the evidence that the mother took the victim to the sheriff the next day and then to the hospital for examination, and that the

doctor examined her and found evidence of penetration of the vagina, and that she accused the father of violating her. This not only allows a reasonable inference by the jury of the fact that the victim told her mother about it but almost demands such a finding in the exercise of common sense. The evidence is so overwhelming that the child told her mother about it that for the mother to say, "She told me that Clines was taking her to the bedroom of a night when I was at work," is cumulative and inconsequential when viewed in the context of all of the other evidence which nearly swallowed it up. The mother made this statement after being allowed to testify that the child did have a conversation with her. Had the objection been sustained, the jury could have reasonably inferred from all the circumstances and subsequent activity that the child told her mother much more than that, and the reasonable inferences could have been much more damaging to defendant than the short statement.

3. We have examined the recharge, which was prompted by a jury question, and find no error. It correctly explained the instruction given in the charge, with respect to the elements of the crimes.

*Judgment affirmed. McMurray, C. J., Deen, P. J., and Pope, J., concur. Banke, P. J., concurs in the judgment only. Birdsong, P. J., Carley, Sognier, and Benham, JJ., dissent.*

DECIDED DECEMBER 5, 1984 —
REHEARING DENIED DECEMBER 20, 1984 —

*James A. Meaney III*, for appellant.
*David L. Lomenick, Jr., District Attorney, Herbert E. Franklin, Jr., Assistant District Attorney*, for appellee.

CARLEY, Judge, dissenting.
Contrary to the majority's equivocation on the issue of error vel non, it is my opinion that the hearsay testimony was erroneously admitted. The position taken by the State is that, insofar as evidence may be relevant to explain *any* conduct, the admissibility of that evidence pursuant to OCGA § 24-3-2 is conclusively established. Based upon the recent Supreme Court decisions in *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982) and *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984), the argument advanced by the State in the instant case was specifically rejected in *Noles v. State*, 172 Ga. App. 228 (322 SE2d 910) (1984). "[T]he admissibility of evidence under OCGA § 24-3-2 is not a determination based only on its relevancy to explain conduct. There is a further requirement. The conduct to be explained must *itself* be a relevant issue in the case." (Emphasis in original.) *Noles v. State*, supra at 229.

The majority's conclusion is that, even if erroneously admitted, the hearsay testimony was harmless in the instant case. The majority advances several reasons why it reaches that conclusion. In my opinion, the majority's reasons are predicated upon a misunderstanding of the hearsay rule and of the Supreme Court decisions in *Momon* and in *Teague*. I do not contest that, if relevant, the *fact* of the existence of an out-of-court conversation may be proved. That is not hearsay. What I do challenge is the majority's conclusion that the *specifics* of such a conversation are admissible under OCGA § 24-3-2 as an exception to the hearsay rule even if the conduct to be explained thereby is not itself a relevant issue in the case. See *Noles v. State*, supra.

In holding that the testimony was harmless, the majority primarily focuses on the issue of the credibility of the victim. In so doing, the majority ignores the "prejudicial effect of bolstering the victim's testimony" that can result from the admission of hearsay. *Parker v. State*, 162 Ga. App. 271, 275 (290 SE2d 518) (1982). If the "door" to the issue of the victim's conversation with her mother was "opened" by appellant in the instant case, and if the victim's credibility was thereby attacked, the proper response by the State would have been to prove the existence of such a conversation. However, the specifics of the victim's contribution to the conversation, as opposed to its existence, were never brought into question and the specifics of that conversation in the form of testimony by the mother would be admissible under OCGA § 24-3-2 *only* if the mother's conduct was a relevant issue. I also disagree with the majority's reliance upon the presence for cross-examination of both the victim and her mother as authority for finding the erroneous admission of hearsay to be harmless. If both parties to a conversation are witnesses in a trial, that is even more reason for not condoning the admission of hearsay testimony by one of them.

Also, I simply cannot understand the majority's conclusion that the physician's examination which showed an unusually enlarged vagina corroborated, in any way, the victim's testimony regarding appellant's commission of the crimes for which he was being tried. Appellant was charged with sodomy, not rape or child molestation!

The single legitimate point raised by the majority regarding harmless error is that the testimony that was given by the mother as to the victim's conversation is not so explicit and graphic as to warrant reversal. However, as I view the case, the evidence authorizing appellant's conviction consists solely of the uncorroborated testimony of the victim. Compare *Noles v. State*, supra. Although corroboration of the victim's testimony is not a factor in determining the sufficiency of the evidence, the *lack* of such corroboration must necessarily be a consideration in applying the "*totality* of the evidence" standard for determining whether it is highly probable that the erroneous admis-

sion of certain evidence is nonetheless harmless. See *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976). In my opinion, the "totality of the evidence" in the instant case is the victim's testimony which, rather than being corroborated in a lawful manner as in *Noles*, was erroneously bolstered by inadmissible hearsay. *Parker v. State*, supra. Unlike the majority, I do not believe that an appellate court should engage in "weighing" the evidence. Therefore, I cannot conclude that it is highly probable that the jury would have accorded the victim's direct testimony, which was the sole evidence of appellant's guilt, the same credibility without the inadmissible bolstering hearsay as the jury obviously did with such hearsay. I reach this conclusion notwithstanding the fact that the hearsay was not necessarily graphic or explicit. The harm lies in the bolstering and corroborative effect of the hearsay, not its explicitness. It is the jury that should weigh the evidence and determine issues of credibility after hearing all of the relevant and admissible testimony of the witnesses. Appellant has not had the opportunity to have a jury weigh the evidence and determine the credibility of the witnesses under these appropriate circumstances. Under the holding of the majority, he will never have that opportunity. Since the "totality of the evidence" consists of the uncorroborated and erroneously bolstered testimony of the victim, I would not hold that it is highly probable that the error is harmless. Accordingly, I must dissent from the majority's decision to weigh the evidence, and from its conclusion that the error was not harmful.

I am authorized to state that Presiding Judge Birdsong, Judge Sognier and Judge Benham join in this dissent.