### ENGLISH *et al. vs.* ENGLISH.

1. On a bill to recover certain land, with rent therefor, and to cancel the deeds held by the defendant, there being also a prayer for general relief, and on the trial, it being admitted by both sides that one of the defendants had purchased the land from complainant, but whether he had fully paid being contested, and evidence being introduced thereon without objection, after verdict finding for the complainant a balance of purchase money, it was too late to urge for the first time, as a ground of a motion for new trial, that the pleadings did not warrant the verdict.

(*a*.) Equity seeks to do full justice; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject matter of the suit, provided the court has jurisdiction for that purpose.

2. Where a vendee of land in possession thereof under contract of purchase from his vendor, but with only part of the purchase money paid, bought the property to protect himself, at a sheriff's sale under a *fi.fa.* against his vendor, he was not thereby relieved from complying with his contract of purchase, but could set off the amount of money so expended by him against the balance of purchase money due the vendor.

3. A request to charge, that though full payment by a vendee of land to a vendor, may not have been proved, yet, if the vendor several times acknowledged full payment, it would be equivalent

proof, was properly refused. The weight of evidence is a question for the jury.

4. Whether the court will re-open a case and allow further testimony after the argument has closed, is a matter of discretion, and his refusal so to do, will not work a new trial, unless his discretion has been abused; especially not, where the evidence is merely cumulative of that which has been introduced.

November 7, 1882.

Practice in Superior Court. New Trial. Vendor and Purchaser. Title. Before Judge SIMMONS. Bibb Superior Court. April Term, 1882.

To the report contained in the decision, it is only necessary to add, in connection with the third and fourth divisions thereof, that two grounds of the motion for new trial were as follows:

(3.) Because, while charging the jury, the court turned to counsel and asked if he had omitted any point, when respondents' attorney requested him to charge: "That though Andrew J. had not proved to their satisfaction the full payment of every dollar, that if they find that Henry had several times acknowledged the full payment, that that would be equivalent proof," which he declined to give, remarking that "the jury must find according to the evidence."

(4.) Because the court erred in refusing to allow counsel for defendant to introduce as a witness J. L. Hardeman, counsel offering to introduce the witness after the argument had closed, and stating to the court that he could show by the witness that the complainant, W. H. English, admitted to him that he had not sent Andrew English to the sheriff's sale at which the lands in dispute were sold, and counsel stating that these facts had only come to their knowledge and that of their client after the argument in the case had been concluded.

LYON & GRESHAM; J. RUTHERFORD; R. W. PATTERSON, for plaintiffs in error.

BACON & RUTHERFORD; W. DESSAU, for defendant.

SPEER, Justice.

This was a bill filed by the complainant below, in in which he alleges that, by purchase, he became the owner of the tracts of land therein described, and that for the purpose of aiding the respondent, Andrew J. English, his cousin, he stocked the same, and t urned all over to the respondent to take charge of and superintend the same, and to farm thereon for complainant; that thereafter, a small *fi. fa.* in favor of Blount & Hardeman was levied on a portion of said land; that complainant directed the respondent to buy in said land for him, which he promised to do with money to be obtained from the factor of complainant; relying upon said promise, complainant did not attend the sale; and that defendant bid off said land for a nominal sum, and took a sheriff's deed to his wife, Susan E. English. Further, complainant alleges that defendant offered to buy from him the two tracts of land at the original prices paid for the same, and complainant agreed to sell the same to him; that deeds to said lands were signed by complainant, but complainant refused to give possession of said lands until the money was paid. Respondent took out a possessory warrant for said deeds against complainant, and the same were, by the court, awarded to the possession of the respondent. Complainant alleges that neither respondent nor his wife ever paid a dollar for the land, and that they are in possession under the deeds so fraudulently obtained, and have likewise seized, and have possession of, all the personal property on said lands. The prayer of the bill is, for respondents to account for the rents, etc., and for a decree to surrender the lands to complainant and a delivery of deeds for cancellation. There was also a prayer for general relief.

Andrew J. and his wife jointly answered the bill, and claimed that the places were bought originally with

the understanding that the farm was to be run by complainant and respondent together as partners ; that in 1873, the complainant became dissatisfied with the partnership, and proposed to sell the lands and stock thereon, to respondent ; that, through the father of complainant, who was the agent of the son, defendant bought said lands at the price of $4,000.00, with interest till paid, and that said payment for said lands, stock, etc., was to be made out of the crops, etc., made on said place ; that under this agreement to sell, defendant went into possession of said land, worked the same, raised crops, made improvements thereon; that having perfect confidence in each other, the sale at first was by parol only ; that, during a series of years, he raised crops on said lands, paid various sums of money for said lands and personalty to complainant, or to his father, as agent, took receipts therefor, in part, to the amount of $4,385.00, besides other payments made to complainant in supplies, provisions, wood, etc., amounting to $800 or $900 ; that in May, 1877, the complainant promised to make deeds to said lands to respondent, but put the same off from time to time ; that respondent eventually employed counsel to enforce the making of said deeds, and just at this time, the land was levied on as the property of complainant; that he attended the sale, and to protect himself, purchased the land and took a sheriff's deed to the same ; got the money to pay for the same from Adair & Co., and not from the factor of complainant; that complainant, after this, made and delivered him the deeds, and after he had done so, within twenty minutes thereafter, asked to see them, and having thus got possession of them, refused to deliver them back ; that respondent sued out a possessory warrant and obtained the deeds by a judgment of the court, and that at no time did complainant ever deny the land was paid for.

On the trial, in which voluminous evidence was offered, both as to the contract of sale, delivery of the deeds, and the amount claimed to be due on the sale, the jury re-

turned a verdict in favor of the complainant below for the sum of thirty-two hundred and fifty dollars, with interest, as a balance due complainant, for said land and stock. Defendants made a motion for a new trial on various grounds as set forth in the record, which was refused, and defendants excepted.

The two main and controlling questions presented by the record in this case and relied upon here, were:

(1.) That the verdict was contrary to law, as not warranted by the pleadings in the case.

(2.) Because the court, after charging the jury as follows: "If, on the other hand, you believe that he, William H., made no such request of Andrew (stated in the 8th ground), he gave him no such instructions, or if he did give him those instructions, Andrew did not promise him to get the money and pay off the execution, but that Andrew went forward the day of sale and bid in the property *bona fide* under this *fi. fa.*, then I charge you that whatever title William H. English had in the land, if Andrew bought it *bona fide* at the sale, he got the title to it, whatever title William had." And again: "If you find, that to be so, then you would be authorized to find for Andrew English, on that theory, whatever the tract of land was sold for at that sale, regardless of the other matters in the case." And again: "But if he (Andrew) made no such promise (as stated in the 8th ground) as that, and went and bought it *bona fide*, then I say he got whatever title William had, and it was a good title as far as he was concerned." The court erred in modifying that charge and charging as follows:

"But I modify that to this effect: If you believe that he (Andrew) was under a contract to purchase at that time with William English; that he bought this land from William English, and was then on the place at the time under contract of purchase with William, then, while he may have got the titles to the land at the sheriff's sale,

he was not relieved from paying William English what he had agreed to pay him for the land. You understand that if there was a contract between them, although he bid it in at the sheriff's sale, his simple bidding it in for one hundred dollars did not relieve him from paying William English what he had contracted to pay, although he may have got the title which William got to the land; he must still go forward and comply with his contract, if there was a contract, and pay him up the whole of it;" but could deduct what he paid at sale from the amount due him.

1. The bill and answers filed, we think, clearly presented two issues for trial before the jury under which evidence was submitted: (1st.) Was there a sale and delivery of the deeds *bona fide* under said sale? (2d.) If there was such a sale and delivery of deeds, then was the land paid for in whole or in part, and if only in part, how much remained unpaid?

But if it was true, as alleged by defendant, that there was a sale upon a price agreed upon, possession given thereunder and payments made, then it was, we think, a proper and pertinent inquiry for the jury, under the pleadings and evidence in the case, to determine whether any, and if so, how much of the purchase money remained unpaid, and to decree on the same.

It is quite evident that the terms of sale were agreed upon by the parties according both to the averments of the bill as well as the answer of respondents; and also that deeds were signed, and after the same were once in possession of respondent under legal process, the respondent below recovered their possession out of complainant by due process of law. All the necessary parties were before the court to settle these questions, both as to the sale and payment for these lands and stock, and these issues were sustained and controverted by testimony offered by both parties without objection; and while it may be critically true that the bill seemingly sought alone

to recover the land, rents, etc., and the value of the personal property, yet there was also a prayer for general relief, and when the bill with the answer is considered, and this payment of the purchase money was fully made an issue by the evidence without objection, it is too late after verdict for the losing party to make as a ground of a motion for a new trial an objection, "that the pleadings did not cover the whole issue covered by the verdict and judgment." 52 *Ga.*, 15. Equity seeks always to do complete justice, and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject-matter of the suit, provided the court has jurisdiction for that purpose. Code, §3085.

2. Was there error in the charge of the court as complained of in the ninth ground of the motion as heretofore set forth? This charge, excepted to as error and set forth in both the second and ninth grounds of the motion, is as to the modification the court made of the requests to charge asked for by the respondent below. The modification made to said requests to charge were in substance as follows: "If you find that there was a sale of the land by Henry to Andrew J., and Andrew J. had not paid him the whole of the purchase money; that his (Andrew J.'s) purchase of the land at the sheriff's sale did not relieve him from the contract of purchase, and he would still be liable for the balance less the amount paid at the sheriff's sale, notwithstanding the purchase at sheriff's sale. Respondent below claimed that his purchase at the sheriff's sale of the land, sold as the property of his vendor, gave him a good title, and discharged him from further liability to his vendor for any unpaid balance of purchase money, for the reason that the title of his vendor had been sold, and thereby his covenant to convey had failed. We can scarcely regard this as an open question before this court."

In 64 *Ga.*, 309, it was ruled, "Upon a breach of a bond to make title to land where the purchaser buys up the

outstanding title thereto, the measure of damages is what the outstanding title actually costs him, and on a suit by the vendor for the purchase money such actual cost can only be set off against the note."

So, also, in the case of *Corbally vs. Hughes,* 59 *Ga.,* "where a vendor, retaining the legal title, gave to the vendee a bond for title and took her notes for the purchase money of the land, and before the notes fell due and the money was paid, a judgment was obtained against the vendor and the land levied upon, and the vendor was notified thereof, but failed to relieve the land from the levy and incumbrance of the judgment, and the property was sold, and the vendee, to protect her possession, was forced to buy the title of the purchaser at the sheriff's sale, and the vendee was insolvent," it was held "that the vendee may set up by equitable plea to suit on the notes for the purchase money the amount so paid, and that a verdict deducting the amount expended to protect the possession was right, and would be upheld." See also 2d Greenleaf, Ev., Sect. 242; 17 *Ga.,* 606; 3d Johns., 472; 4 Mass., 627.

3. We see no error in the refusal of the court to charge as requested in the 3d ground of the motion. It was not for the court to tell the jury what would be equivalent proof of payment in full. The weight of evidence was a question, under the law, for the jury alone.

4. The refusal of the court to allow the testimony of Mr. Hardeman at the stage of the case in which it was offered, rested in the discretion of the court, and unless that discretion was abused, we are not inclined to interfere. Moreover, the evidence was merely cumulative, and is not of itself alone a ground for new trial. We are not prepared to say there is not evidence sufficient to support the verdict, and as the judge below was satisfied with it, and we see no material error in the record, the judgment below must stand affirmed.

Judgment affirmed.