## 50993. GEORGIA POWER COMPANY v. EDWARDS.

DEEN, Presiding Judge.

1. (a) Edwards was badly burned during the installation of a lighting system for the Cedartown High

School football field, a contract on which he was the low bidder. Very briefly, the defendant power company had previously run power to the high school through a radial 1,500 KVA transformer containing 65 ampere fuses. 12,470 volts were available on the primary side. A loop system was being added to light a new elementary school and football field. For purposes of the football field a 300 KVA transformer was added about 200 feet west of the original transformer, and installed by the defendant, the plans for which called for 15 ampere fuses. The defendant ordered the transformer from a manufacturer; when it became evident that this would not arrive in time it arranged for installation of a 300 KVA transformer without fuses which was available from its Dalton office. Cables were placed underground between the transformers, and an underground conduit from the second transformer to the switch box. The power company installed the transformer on a concrete pad, and, according to the plaintiff's testimony, also installed the conduit halfway out to the switch box and "we picked it up and installed it the rest of the way to the switch box. We installed the wire inside the conduit, the power company made it up on their end and we made it up on our end, that supplied the voltage and the current from the transformer to the switch box." A fire and explosion occurred in the switch box during testing, apparently from a short circuit, and the plaintiff standing a foot or two away received massive third degree burns over a fourth of his body surface.

The theory of the defendant and its experts was that this extraordinary fire could only have been caused by the plaintiff himself, while he was standing before the box connecting the various light circuits for testing. The plaintiff's testimony, corroborated by other witnesses, was that the energy surge happened some interval after he had flicked the switch, that nothing he did caused it, and that the fire first appeared as boiling up out of the conduit at the base of the switch box rather than from among wires within the box itself. Thus, the plaintiff's theory was that a surge of electricity somewhere in the system had caused the short circuit, due to the fact that no fuses had been installed on the new transformer, and that

the large transformer was greatly "overfused" so as not to protect the lines running from the one just installed.

(b) It has been held that fuses placed on transformers are for the benefit of the power company, and that it has no duty to a plaintiff to provide fuses or circuit breakers or otherwise prevent the admission of electricity into lines and systems under the control of a plaintiff, where the plaintiff is injured as a result of a short circuit or fire resulting from defective equipment which is under the latter's control. Lowes v. Union Electric Co. (Mo.), 405 SW2d 506; Reichholdt v. Union Elec. Co. (Mo.), 329 SW2d 634; Minneapolis Gen. Elec. Co. v. Cronon, 166 F 651. The rule in this state is that "where wiring or other electrical appliances on private premises are owned and controlled by the owner or occupant of the premises a company which merely furnishes electricity is not responsible for the insulation or condition of the wiring or appliances, and is not liable for injuries, caused by their defective condition, to the owner or occupant, or to third persons on the premises, except that the rule thus stated seems to be properly qualified to the extent that whenever electric current is supplied with actual knowledge on the part of the one supplying it of the defective and dangerous condition of his customer's appliances, he will be charged with liability for injuries occasioned by supplying current for use on such defective wires or appliances..." and the responsibility of the supplier ends "when the connection is properly made under proper conditions, and it delivers the current in a manner which will protect both life and property ... This, however, does not relieve the company from the duty of using proper devices and safeguards to prevent dangerous currents from passing into buildings of patrons and there causing damage." *Ga. Power Co. v. Kinard,* 47 Ga. App. 483, 484 (170 SE 688). The current should be delivered in a manner to protect life and property. *Milligan v. Ga. Power Co.,* 68 Ga. App. 269 (1) (22 SE2d 662). That circulation of primary voltage current over secondary lines may be negligence, see *City of Thomasville v. Jones,* 17 Ga. App. 625, 626 (87 SE 923). Under the evidence in this case the jury might have believed that the fire started from a short circuit within the switch box which the plaintiff had been wiring and

was not the fault of the power company. On the other hand, it obviously did accept the theory, supported by testimony of the plaintiff and another eyewitness, that the first flame came from under the box, through the conduit; that the only reasonable source of a fire from this location was a powerful surge of electricity through the unfused lower-voltage transformer sufficient to melt the wires in the conduit, and that failure to fuse the transformer in accordance with the plans and specifications of the power company in installing it in the first instance was a negligent act, the results of which might have been foreseen by it. Accordingly, there was at least some evidence to support the verdict in favor of the plaintiff.

(c) It is further contended that when the plaintiff, without checking on the fusing, directed the system to be energized he assumed the risk of whatever might happen. Only in plain and palpable cases will assumption of risk or contributory negligence issues be decided by the court as a matter of law. *Carroll Elec. Membership Corp. v. Simpson,* 106 Ga. App. 29 (2) (126 SE2d 310); *Ga. R. &. Bkg. Co. v. Galloway,* 55 Ga. App. 541 (190 SE 431). Obviously, since the defendant contends that failure to fuse was not in any event negligence, it will not be held to be negligence as a matter of law so as to bar the plaintiff from recovery, whether he did or did not know that the second transformer carried no fusing, he having a right to rely on the supplier's performing its duty to deliver a current suitable for the system being installed.

The motions for judgment notwithstanding the verdict and for a new trial on the general grounds are without merit.

2. An expert witness testified that a big, hot flash could occur in one-tenth of a second if improperly fused. Asked if this could result from a 15-amp fuse with heat sufficient to inflict second and third degree burns, he replied in the negative. In reply to a question, "So, what you're talking about is the proper operation of the fuse, or what the fuse should do is based on the manufacturer's specifications?", he replied that the fuse should do what the manufacturer said it should do; he had not personally conducted a test; he had conducted Air Force experiments

with exploding wires, but testing in a destructive manner is not done anymore. A hearsay objection was interposed and overruled. However, an expert's opinion may be based in part upon hearsay, and when it is, this goes to the weight and credibility of the testimony, but not to its admissibility. *City of Atlanta v. McLucas,* 125 Ga. App. 349 (2) (187 SE2d 560) et cit.

3. It was not error to allow the plaintiff to state that he was going to have certain scar tissue removed and skin grafts done at a future time.

4. There was no error in allowing testimony that the fire burned for forty-seven minutes, where it burned, and how it was put out, for whatever light this may have shed on the subject. "Doubtful evidence is to be admitted rather than excluded. The current of authority in this state is to admit it, leaving its weight and effect to be determined by the jury." *Crozier v. Goldman,* 153 Ga. 162, 165 (5) (111 SE 666).

5. We have examined the rulings on evidence in Enumerations 8 and 9 and find no reversible error, nor any authority cited to sustain the appellant's position therein.

6. The court charged succinctly the law of damages relating to future loss and permanent injuries. There was evidence of scar tissue and loss of use in one hand as of the time of trial some 14 months after the injury. In *Southern R. Co. v. Gale,* 103 Ga. App. 87, 92 (118 SE2d 742) it was held that evidence, although meager, from which the jury were informed of the extent of the original injury and the residual effects at the time of trial, and from which they might be authorized to infer some degree of permanent disability, justified a charge on damages appropriate thereto. The testimony here authorizes a finding that future surgical procedures are contemplated, and that the degree of permanent disability would depend on the outcome. The disability had continued long enough to justify a charge on the subject.

7. Plaintiff submitted five requests to charge, the giving of each of which is enumerated as error. We find none of the instructions cause for reversal and deal with them briefly. The statement: "The Power Company was bound to employ such approved apparatus in general use

as would reasonably be necessary to prevent injury to persons or property" is a permissible paraphrase of the language in *Vickers v. Ga. Power Co.,* 79 Ga. App. 456, 459 (54 SE2d 152). The statement: "where the proximate efficient cause of an injury is the admission, through negligence of the power company, of a high and dangerous current which causes damage to persons and property, the company will be held liable" finds support in *Ga. Power Co. v. Kinard,* 47 Ga. App. 483, supra. The operative word here is *negligence.* The company is not treated as an insurer of the safety of the plaintiff. The third request allows the jury to find for the plaintiff "if" the alleged acts of negligence were the proximate cause of injury, followed by the statement that if they determined the failure to fuse the second transformer was the proximate cause of the injuries, this was negligence on which the plaintiff could recover. We have held in the first division of the opinion that this was a jury question; accordingly, the instruction was proper. Comparative negligence of course enters into this case and was fully charged; this sentence is not error because it fails to reiterate the comparative negligence doctrine. The fifth request is adapted from *Ethridge v. Nicholson,* 80 Ga. App. 693, 695 (57 SE2d 231) and is not argumentative, as contended, in assuming that the power company was an original wrongdoer. Instructions which are in the form of hypothetical statements as to the law applicable if the jury finds a certain state of facts are not for this reason objectionable as argumentative. *Harmon v. Givens,* 88 Ga. App. 629, 641 (77 SE2d 223). The statement here "the original wrongdoer" could not have been taken by the jury to mean that the court was directing them to find the power company an original tortfeasor; the statement merely gave in abstract terms a rule of law which might be applied if the factual situation warranted.

*Judgment affirmed. Evans and Stolz, JJ., concur.*

ARGUED SEPTEMBER 8, 1975 — DECIDED SEPTEMBER 25, 1975 — REHEARING DENIED OCTOBER 15, 1975 —

*Brinson, Askew & Berry, Robert M. Brinson,* for

appellant.

*Gammon & Anderson, Wayne W. Gammon,* for appellee.