## 54435. REDWING CARRIERS, INC. v. KNIGHT.

WEBB, Judge.

At the core of this personal injury litigation is the physical property of hot liquid asphalt, or "resin," to congeal when cooled to a temperature of 190° F. The asphalt was transported in a tanker truck of defendant Redwing Carriers from Jacksonville, Florida to the Johns-Manville plant in Savannah, and plaintiff Kenneth Knight, an employee at the plant, was sprayed with hot asphalt when one of Redwing's hoses burst during the unloading operation. While virtually every aspect of this occurrence was in dispute at trial, the witnesses agreed that the asphalt would not flow through the hoses from Redwing's tanker into the plant's storage tanks, the apparent cause of which was the congealing of the asphalt either in the pump or hoses on Redwing's rig or in the connecting hoses of the plant.

In order to melt the asphalt and unclog the line Knight had been using a torch to heat either the pump and hoses on the tanker, according to his testimony, or the attached hoses of the plant, according to the testimony of Brooks, Redwing's driver. Brooks would try the pump located on the tanker and, when the asphalt would not flow, the pump would be turned off and Knight would squat under the tanker to heat the pump or hoses.

On at least one occasion during this procedure Knight had moved to a safe distance away when Brooks

tried the pump. Brooks testified that on the final attempt he told Knight "Well, we'll try it again," entered the cab and engaged the pump, then climbed down and walked back 12 or 15 feet along the tanker to the control valve, which he opened after again telling Knight "We'll try it again." While Brooks testified that Knight had looked at him and must have heard him, Knight testified he heard nothing until he saw and heard the pump turning, whereupon he attempted to get away as fast as he could. The line burst, however, and both Knight and Brooks were showered with the hot asphalt, resulting in the present suit by Knight against Redwing.

The evidence was in conflict as to the proper and customary procedure to be followed in unloading the asphalt and as to whether it was being observed, and the usual questions were presented as to negligence, proximate cause, contributory negligence, etc. The jury resolved these conflicts by awarding Knight $450,000, and this appeal followed. We affirm.

1. Redwing argues that its motion for directed verdict should have been granted because of the following testimony of Brooks' immediate supervisor: "Sir, the company rules at Redwing Carriers say nobody will heat — put heat or cause heat to be put on a piece of Redwing equipment. I am the Terminal Manager and had I known it, the change would have been made right then."

We are cited no evidence showing that this prohibition was communicated to either Brooks or Knight; and since Brooks was performing acts within the class of service for which he was employed (driving and unloading the truck), we cannot hold as a matter of law that in allowing Redwing equipment to be heated he was outside the scope of his employment (*Hagin v. Powers,* 140 Ga. App. 300 (231 SE2d 780 (1976)), or that Knight in doing so was a mere "volunteer." *Huddle House, Inc. v. Burke,* 133 Ga. App. 643 (1) (211 SE2d 903) (1974). In any event the evidence was in hopeless conflict as to whether it was, in fact, Redwing's equipment which was being heated, and this whole argument must therefore fall along with its major premise.

2. Redwing contends that the court erred in allowing juror Hill to remain with the jury after he disclosed that

he would be prejudiced in favor of plaintiff's case because of a prior, similar injury. No harm befell Redwing, however, since the juror was the second alternate, was instructed by the court, out of the presence of the other jurors, not to discuss the prior accident with them, and was excused prior to deliberation.

3. Knight testified that upon being showered with the asphalt he was blinded but was so familiar with the premises that he was able immediately to grope his way toward the first aid station at the plant, a distance he estimated as "about like from here to that water fountain out that door [of the courtroom]." He testified: "Q. When did you first see Brooks? A. In the lab, after the accident, sir, in the lab. Q. Was he — you saw him there or did you see him coming in? A. I saw him in the lab, sir. Q. He was in the lab? A. Yes, sir, because they were telling him to stop pulling the — trying to pull the asphalt off, because it was pulling, you know, his skin and all off. Q. Telling who? I missed you. You said telling you or telling him? A. No, he wasn't telling me, sir; he was just talking, you know. Q. Somebody was telling somebody else about pulling the asphalt off, you said. A. Brooks was telling this while he was in the lab, to who was taking care of him, sir. Q. Brooks was telling the people in the lab — I'm asking you about pulling asphalt off. A. He was pulling it off and they was telling Brooks to stop pulling it. Q. Okay. Was he talking when you first saw that? A. Brooks? Yes, sir. He was telling me, 'Mr. Knight, I don't know why I opened the valve; I'm sorry I opened it; I don't know why I opened the valve,' and I didn't ask him any questions because I was burning and they were trying to get ice packs on me and everything else."

Redwing objected to this evidence of Brooks' statement "on the grounds of hearsay" and argued that it did not fall within the res gestae exception to the hearsay rule because "it was beyond the point where this would be an excited utterance." The trial court ruled that the statement was made spontaneously by Brooks as part of the excitement of the event, and this court cannot rule otherwise under the circumstances. Code § 38-305; Green, Georgia Law of Evidence § 289 et seq.

While Redwing contends that Brooks had no

authority to make an admission binding upon Redwing, this point was neither made nor ruled upon in the trial court and will not be considered here. "A reason why evidence should not be admitted will not be considered on appeal unless the reason was urged below." *Employers Commercial Union Ins. Co. v. Wrenn,* 132 Ga. App. 287 (1) (208 SE2d 124) (1974).

4. Redwing's terminal manager began to relate a statement made to him by a Johns-Manville employee two days after the occurrence, whereupon plaintiff objected that it was hearsay. Redwing responded with "He is deceased, and made a declaration against the interest, pecuniary interest, of Johns-Manville corporation at the time it was made and it was a knowing declaration." The trial court ruled the statement out, and Redwing complains in Enumeration 9 that "The court erred in not allowing the defendant to introduce into evidence the statement of the deceased plant manager of Johns-Manville which was a declaration against the pecuniary interest of Johns-Manville."

This enumeration is without merit. Since Johns-Manville was not a party to the trial the statement could not come within the exception to the hearsay rule allowing admissions of a party-opponent (Green, supra, §§ 279, 233), and since there was no showing that the statement was against the interest of the deceased declarant it could not come in as a declaration against his interest. Green, supra, § 270 et seq.

5. Redwing contends that the court erred in allowing its driver Brooks to put on a demonstration in the courtroom at plaintiff's request over the objection that the conditions were completely different from those at the time of the injuries. Without the benefit of diagrams, models, photographs etc. used at trial we can make no independent determination as to the similarity of conditions, and the allowance of the demonstration was within the discretion of the trial court, its weight and credit being properly left to the jury to determine in conjunction with the other evidence as to the conditions.

"Generally, the discretion of the judge will be upheld where he refuses to permit the demonstration or does permit it." Agnor, Georgia Evidence § 15-4. No abuse of

discretion has been made to appear.

6. Redwing complains in Enumerations 5 through 7 of the sustaining of plaintiff's objections to the testimony of defendant's expert witness which was based upon hearsay. The court ruled "that this witness should base his expert opinion on his personal observations or on a hypothetical question which is based on other evidence already in evidence or evidence that you're going to put in" and not upon "what someone else told him."

Since this testimony was not as to value (*City of Atlanta v. McLucas,* 125 Ga. App. 349 (2) (187 SE2d 560) (1972); *State Hwy. Dept. v. Howard,* 124 Ga. App. 76 (2) (183 SE2d 26) (1971); *Gulf Refining Co. v. Smith,* 164 Ga. 811 (2) (139 SE 716) (1927)), mental condition or some other recognized exception to the rule that an opinion may not be based upon hearsay, the trial court was correct. Agnor, supra § 9-7; Green, supra § 111. While it has been held that an expert may give his opinion without stating the foundation therefor and without a hypothetical question based upon other evidence, this rule applies where the expert's opinion is based upon "facts which he knows and has observed" (*Corbin v. State,* 81 Ga. App. 353, 354 (58 SE2d 485) (1950)); and where it appears that the opinion is not so based but rather upon hearsay, the opinion is inadmissible. *Perkins v. Perkins,* 227 Ga. 177 (3) (179 SE2d 518) (1971); *Paulk v. Thomas,* 115 Ga. App. 436 (3a) (154 SE2d 872) (1967).

"The traditional view, still followed in most jurisdictions, has been that an expert may state an opinion based upon his firsthand knowledge or based upon facts in the record at the time he states his opinion, or based partly on firsthand knowledge and partly on the facts of record. If the opinion is to be based on the facts of record, they may be in the expert's possession by virtue of his having been present at the taking of the testimony asserting those facts, or they may be furnished to him prior to his statement of his opinion by including them in a hypothetical question that asks him to assume their truth and state a requested opinion based upon them." McCormick on Evidence 2d Ed. 31, Expert Testimony, § 14.

Redwing relies upon two recent decisions of this

court, *Ga. Power Co. v. Edwards,* 136 Ga. App. 135 (2) (220 SE2d 460) (1975) and *Herrin v. State,* 138 Ga. App. 729 (7) (227 SE2d 498) (1976), as authority for his contention that an expert's opinion may be based in part on hearsay, and that it goes to the weight and credibility of the testimony, not to its admissibility. As authority for such assertion, however, both of these cases cite *City of Atlanta v. McLucas,* supra, involving testimony as to value, and to the extent that they are contrary they will not be followed here.

7. Enumerations 13, 15 and 17, complaining that the court should have declared a mistrial because of allegedly improper remarks by counsel, show insufficient cause for reversal. See *Kendrick v. Kendrick,* 218 Ga. 460 (4) (128 SE2d 496) (1962); *A. W. Easter Const. Co. v. White,* 137 Ga. App. 465 (3) (224 SE2d 112) (1976).

8. Because the name of Knight's wife had not been supplied in answer to Redwing's interrogatories, it objected to her testifying and moved for a continuance in order to take her deposition. In colloquy which ensued it did not appear that her testimony would go to critical matters, and in these circumstances the court offered counsel time to interview the witness and after that to make any further objections or motions deemed necessary. But counsel declined the offer and stood on the original objection in an "all or nothing" posture, a fatal mistake since the interview offered by the court was not plainly useless and inadequate. The proper procedure would have been to accept the offer of interview and then to seek any additional relief thought necessary. That, we think, is the teaching of *Nathan v. Duncan,* 113 Ga. App. 630, 641 (149 SE2d 383) (1966) and *Jones v. Atkins,* 120 Ga. App. 487, 491 (171 SE2d 367) (1969), and the same general principle has been applied with respect to the list of witnesses in criminal cases (*Huff v. State,* 141 Ga. App. 66 (1) (232 SE2d 403) (1977) and cits.), as well as to time to prepare a criminal defense (*Gibson v. State,* 143 Ga. App. 467 (1977)), even where the prosecution surprises the defense with a material variance at trial. *Caldwell v. State,* 139 Ga. App. 279, 287 (228 SE2d 219) (1976). This enumeration is without merit.

9. (a) In Enumerations 2 through 4 counsel attempt

to create a brouhaha in this court with ex-record narrations as to a midnight telephone call from a conscience-stricken co-worker of plaintiff who, breaking his code of silence, sought to redeem his anonymous soul by supplying the name of a witness, Clay, purportedly known to plaintiff's counsel, but not furnished by him in answers to defendant's interrogatories, whose testimony would fairly bristle with recriminations of such enormity as to strip plaintiff of his masquerade as the broken craftsmaster and reveal him for the malingering schlemiel that he was.

We demur. These wondrous revelations, while posited here and in the motion for new trial as the spearhead of the post-judgment assault on these proceedings, were made to defense counsel after both sides had closed, which was the night before the day when final arguments and charge to the jury were to be made; and it is the relief sought and record made that Thursday morning which govern the disposition of these enumerations, not independent post-trial motions seeking to overturn the entire case. *Joyner v. State,* 208 Ga. 435, 438 (2) (67 SE2d 221) (1951); *Caldwell v. State,* 139 Ga. App. 279, supra, division 8; *Maloy v. Dixon,* 127 Ga. App. 151, 163 (193 SE2d 19) (1972).

The route which defense counsel took was a motion to reopen the evidence in order to let in the testimony of Clay, and we will decide that issue without regard to matter extraneous to the trial record. As both the Supreme Court and this court have held since the earliest times, "[t]he burden is always on the appellant in asserting error to show it affirmatively by the record" (*McKenzey v. State,* 127 Ga. App. 304 (1) (193 SE2d 226) (1972) and cits.), not by evidentiary assertions in motions for new trial (*Johnson v. Cleveland,* 131 Ga. App. 560, 561 (1) (206 SE2d 704) (1974)), nor in enumerations and briefs in the appellate court. *Maloy v. Dixon,* 127 Ga. App. 151, 153 (1), supra. The corollary rule is that the scope of review is limited to the scope of the ruling in the trial court as shown by the trial record and cannot be enlarged or transformed through a process of switching, shifting, and "mending your hold." *Sanders v. State,* 134 Ga. App. 825, 826 (1) (216 SE2d 371) (1975) and cits.; *Sumners v. State,*

137 Ga. App. 493, 494 (224 SE2d 126) (1976) and cits.; *Reese v. State,* 139 Ga. App. 630, 631 (3) (229 SE2d 111) (1976) and cits.; *Harrison v. Lawhorne,* 130 Ga. App. 314, 318 (5) (203 SE2d 292) (1973). Consequently the determination of the motion as made and ruled upon below will be dispositive of these enumerations.

(b) It has been held over and over that "[t]he reopening of a case after both sides have announced closed, is a matter for the discretion of the court, and his decision will not be reversed unless decided injustice has been done thereby." *Maddox v. State,* 68 Ga. 294 (1881).

The testimony of Clay, the co-worker of plaintiff, proffered to the court in pursuance of the motion to reopen (*Ward v. State,* 112 Ga. 75 (1) (37 SE 129) (1900); *Freyermuth v. South Bound R. Co.,* 107 Ga. 31 (2) (32 SE 668) (1899)), was that before the injuries the witness had seen plaintiff with cotton in his ears and had heard him complain of headaches the morning after he and the witness had had a few drinks after work. To say that this testimony was anticlimactic in view of the alarums and excursions with which it was announced seems unnecessary. It was impeaching at best, and ordinarily we would find no reversible error in failing to reopen to let it in. "Refusal to reopen the case after the close of the evidence to admit merely impeaching testimony is proper and not an abuse of discretion." 88 CJS 221, Trial, § 106. The same is true of cumulative evidence. *English v. English,* 69 Ga. 636, 637 (4) (1882).

(c) But Redwing seems to contend that failure to list the proffered witness in answer to interrogatories would take the case out of the above rule and would require that the evidence be reopened when the witness came to light. Assuming for the purpose of argument that that contention is correct, we nevertheless agree with the trial court's ruling that there was no duty on plaintiff's part to supply the name of Clay or Whetstone, another co-worker. In close questioning of Clay by the court it appeared only that the lawyer had asked him over the telephone whether he "had ever heated a pump," to which Clay responded in the negative. Clay had then handed the phone to Whetstone, who hung up on the lawyer. The interrogatory did not seek the name of every

person to whom counsel had spoken, but rather the names of persons "known to or reasonably believed by you . . . who have or report to have knowledge or information of any fact pertaining to this controversy." Clay neither had nor reported to have such knowledge, he being one of the undoubted four billion other people on earth who had never heated a pump. Consequently we find no error in the trial court's holding that the name of this person was not required to be discovered.

"Historically it has been the policy of the Georgia appellate courts to refuse to interfere with a trial court's exercise of its discretion in absence of abuse. This policy is applicable to a trial judge's exercise of the broad discretion granted to him under the discovery provisions of the Civil Practice Act." *Houston &c. Ins. Co. v. Stein Steel &c. Co.,* 134 Ga. App. 624, 626 (2) (215 SE2d 511) (1975) and cits.

10. Redwing contends that the court erred in sending in a pocket calculator at the request of the jury without allowing counsel the opportunity to determine the accuracy of it. There are no references to the transcript in support of this enumeration, and apparently this objection was not made below. We find no reversible error. "The burden is on the party alleging error to show it affirmatively by the record." *Shepherd v. Shepherd,* 225 Ga. 455, 457 (169 SE2d 314) (1969).

11. Similarly, no cause for reversal is shown with respect to the denial of defendant's requests to charge. These twenty enumerations of error, attempted to be argued in a general way in two pages in the brief, give no references to the record where the requests may be found, what they are, or the evidence which it is contended supports them. "Grounds of error not covered by the brief or the argument of counsel for the plaintiff in error will be treated as abandoned. The general statement in the brief that grounds not referred to or argued are nevertheless not abandoned will not be sufficient to change the rule above announced. Courts of review have the right to expect assistance from counsel by citation of authority or argument, and will be apt to accept the inference that the lack of interest by counsel is due to a conviction of the lack of merit." *Youmans v. Moore,* 11 Ga. App. 66 (4) (74 SE

710) (1912).

12. We cannot say that the award of the jury was "so excessive as to justify the inference of gross mistake or undue bias." Code § 105-2015. "Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear 'exorbitant,' 'flagrantly outrageous,' and 'extravagant.' 'It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush.' It must carry its death warrant upon its face." *Realty Bond &c. Co. v. Harley,* 19 Ga. App. 186, 187 (91 SE 254) (1917); *Jones v. Spindel,* 128 Ga. App. 88, 92 (196 SE2d 22) (1973).

In view of the injuries suffered and damages proved we cannot declare that the verdict is excessive, particularly in view of the pain and suffering involved. While counsel contend that the jury simply multiplied plaintiff's tax return by his life expectancy without reducing it to present cash value, they fail, again, to demonstrate error by the record.

13. Knight has moved for an assessment against Redwing of 10% of the judgment rendered on the grounds that the appeal was made for purposes of delay only. This motion, considering the record and gravity of the case and the enumerated complaints, seems rather inappropriate and it is denied.

*Judgment affirmed. Deen, P. J., and Birdsong, J., concur.*

ARGUED SEPTEMBER 7, 1977 — DECIDED SEPTEMBER 20, 1977 — REHEARING DENIED OCTOBER 28, 1977.

*Lee & Clark, Fred S. Clark, Steve Scheer,* for appellant.

*Duffy & Shearouse, Robert C. Shearouse, Robert J. Duffy,* for appellee.

ON MOTION FOR REHEARING.

We have carefully reviewed and considered appellant's motion for rehearing, as we do on every

motion. Two cases cited by counsel, *Eschen v. Roney,* 127 Ga. App. 719 (194 SE2d 589) (1972) and *Ramsey v. Thomas,* 133 Ga. App. 869 (212 SE2d 444) (1975), although meriting the commendations received, have no relevancy to this motion. Perhaps more applicable are *Chambers v. State,* 134 Ga. App. 53, 56 (213 SE2d 158) (1975) and *Williams v. State,* 126 Ga. App. 350 (190 SE2d 785 (1972) footnote 1.

Counsel for Redwing stated in their brief that "Thursday morning at the courthouse, Clay told [Redwing's] counsel of Whetstone's name." Counsel now contends that Whetstone's existence was not known until *after* the trial, and that for this reason his affidavit was properly filed in conjunction with the motion for new trial on a "newly discovered" basis. It is thus urged that we should consider it in connection with Division 9 of the opinion, while at the same time ignoring the counter-affidavits filed on plaintiff's behalf.

It is clear from the record that Whetstone, also called Woodhouse and Woodstone, was known to Redwing's counsel when he was attempting to put Clay on the stand that Thursday morning, and that all parties became apprised of his existence from Clay's proffered testimony. Thus Whetstone's affidavit never became a part of the record and cannot be considered by this court. *Johnson v. Cleveland,* 131 Ga. App. 560, 561 (1) (206 SE2d 704) (1974).

We deny the motion for rehearing and adhere to the judgment.

*Motion for rehearing denied.*