### 67052. HABERSHAM ELECTRIC MEMBERSHIP CORPORATION v. DALTON.

McMURRAY, Chief Judge.

On or about October 30, 1979, Donald Dalton, while on top of a chicken feed bin, suffered electrical burns when a tool (a hoe attached

to a conduit pipe with clamps) he was using to clean the bin contacted overhead high-voltage power lines owned by the Habersham Electric Membership Corporation.

As plaintiff, he brought this action against the defendant power company (Habersham Electric Membership Corporation), contending that defendant had maintained, constructed and inspected their lines (which traversed over the Dalton farm in White County) in a negligent manner and that this alleged negligence was the proximate cause of his injury.

Defendant answered, denying all allegations of negligence and further asserted that plaintiff was contributorily negligent.

The case was tried before a jury, and a verdict was returned awarding damages to plaintiff. From the judgment entered thereon, defendant appeals. *Held*:

Defendant enumerates the general grounds and the denial of its motion for directed verdict as error. Since these enumerations of error challenge basically the sufficiency of the evidence to support the verdict, this court will apply the "any evidence" test. *Speir v. Williams*, 146 Ga. App. 880 (1, 2) (247 SE2d 549). "That is, where the evidence does not demand a particular finding, a directed verdict is not warranted; where there is some evidence to support the verdict, this court will not interfere with it." *B & L Service Co. v. Gerson*, 167 Ga. App. 679 (1) (307 SE2d 262). Construed most favorably to the plaintiff because of the favorable verdict and judgment, the evidence at trial showed that the particular area in which plaintiff lived was mainly a poultry farming community. The power company was aware of this and in particular, knew that the "Dalton Farm" (on which the incident in question occurred) was being used as a chicken farm. Further, the power company knew that the chicken houses and feed bins used by the Daltons in their chicken farming operation were constructed in proximity to its power lines. In this regard, the evidence reveals that when the plaintiff's father (Haskel E. Dalton) decided it would be necessary to build his chicken houses underneath the two power lines which traversed over his farm at that time, he contacted the general manager of the power company, Mr. Cook. Mr. Cook came out and looked at the lines; however, when plaintiff's father requested that the two lines be moved, Mr. Cook responded that the power company could not do it despite the fact that Mr. Dalton offered to pay one-half the relocation cost. (Note: Mr. Cook was deceased at the time of trial and this account of what happened was recounted by plaintiff's father, Mr. Dalton). Furthermore, there was evidence from which the jury could find that the *three additional electrical wires*, which were added below the original two that traversed over the Dalton Farm, *were installed after the feed bin in question was in place.* (In this regard, see *Clinton v. Gunn-Willis Lumber Co.*, 77 Ga. App. 643 (49

SE2d 143), recognizing the duty of a power company to exercise that degree of care which is commensurate with changing conditions.) Moreover, there was testimony to indicate that the installation of these wires did not meet the clearance requirements of the National Electric Safety Code (a nationwide standard used by the electrical industry for installing and maintaining distribution lines), and that they were not properly maintained, constructed or inspected. Plaintiff also provided testimony to show that it was common practice in the particular area in which he lived to clean a feed bin by using a hoe attached to a conduit pipe of a sufficient length to reach the bottom of the bin (i.e., the same method plaintiff had used on the day of the incident in question).

The power company owed a duty to maintain the lines "in such a manner and at such a location as not to injure persons who might be reasonably expected to come in contact with such lines." *Carden v. Ga. Power Co.*, 231 Ga. 456, 456-457 (202 SE2d 55). As stated by the court in *Collins v. Altamaha Elec. Membership Corp.*, 151 Ga. App. 491, 492 (1B) (260 SE2d 540), quoting from *Southern Bell Tel. &c. Co. v. Whiddon*, 108 Ga. App. 106, 108-109 (132 SE2d 237), " '(t)he causal connection between an original act of negligence and injury to another is not broken by the "intervening" act . . . if the nature of such intervening act was such that it could reasonably have been anticipated or foreseen by the original wrongdoer.' " The court further added that " 'the foreseeability of (an intervening agency) is for the jury where reasonable minds might differ.' " Id., p. 492.

In light of the evidence presented, we decline to hold that plaintiff's act (of sticking the conduit pipe handle into the overhead high-voltage power lines while cleaning the feed bin in question) was unforeseeable as a matter of law. The evidence was sufficient for the jury to find that the defendant power company should have anticipated that someone in the ordinary and usual course of farming operations, either lawfully or negligently, might strike its alleged negligently maintained wire. Similarly, we cannot conclude as a matter of law that the plaintiff's own negligence was the proximate cause of his injury, nor can we conclude that the plaintiff assumed the risk. "Only in plain and palpable cases will assumption of risk or contributory negligence issues be decided by the court as a matter of law. [Cits.]" *Ga. Power Co. v. Edwards*, 136 Ga. App. 135, 138 (1 (c)) (220 SE2d 460). The general grounds are without merit, and the trial court did not err in denying defendant's motion for a directed verdict.

Defendant further contends that no one had provided the power company with notice, as required by OCGA § 46-3-30 et seq. (formerly Code Ann. § 34B-201 et seq.), that tools or equipment were going to be used within 8' of its lines, and that as such, the plaintiff was barred from recovering. Defendant's contention is without merit.

The question of whether the failure to provide such notice would insulate the power company from liability as a matter of law has already been answered in the negative. See *Malvarez v. Ga. Power Co.*, 250 Ga. 568 (300 SE2d 145). Furthermore, there was sufficient evidence in the record from which the jury could find that the power lines were both improperly located and maintained. Thus, this case does not fall within the *Malvarez* exception which states that "lack of such notification is a bar to recovery only where the lines are 'otherwise properly located and maintained.' [Cit.]" Id., p. 569.

*Judgment affirmed. Shulman, P. J., concurs. Birdsong, J., concurs specially.*

DECIDED MARCH 14, 1984 —
REHEARING DENIED MARCH 27, 1984 — 

*William A. Dinges*, for appellant.
*Kenneth R. Keene, Roland H. Stroberg, Jack M. Carey*, for appellee.

BIRDSONG, Judge, concurring specially.
I concur only because I believe we are bound by *Malvarez v. Ga. Power Co.*, 250 Ga. 568 (300 SE2d 145); however, I think the *Malvarez* case leaves many questions unanswered.